**FEDERAL DEPOSIT INSURANCE COR-PORATION, Plaintiff-Appellee,**

v.

**CITIZENS BANK & TRUST COMPANY OF PARK RIDGE, ILLINOIS, Defendant-Appellant.**

**No. 77–1814.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1978.

Decided Feb. 2, 1979.

---

James T. Griffin, Chicago, Ill., for defendant-appellant.

Raymond A. Fylstra, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and SHARP, District Judge.*

TONE, Circuit Judge.

Federal Deposit Insurance Corporation, after becoming the receiver of an insolvent state bank, entered into a so-called purchase and assumption transaction under 12 U.S.C. § 1823(e) whereby it, as receiver, assigned to itself in its corporate capacity the insolvent bank's claim against Citizens Bank & Trust Company. In FDIC's suit on the claim, Citizens asserted a set-off and counterclaim based on alleged liability of the insolvent bank to Citizens arising out of an unrelated transaction. The issue we find to be controlling is whether the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, withdrew the sue-and-be-sued liability of FDIC under 12 U.S.C. § 1819 for torts not covered by that Act and thus makes FDIC immune from Citizens' claim.

When an insured state bank becomes insolvent, FDIC may accept appointment as

---

* The Honorable Allen Sharp, District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

the receiver, if the appointment is authorized by state law and tendered in accordance with that law. 12 U.S.C. § 1821(e). When acting as a receiver of a closed bank, FDIC may deal with itself. Thus it may act in two capacities, as receiver and on its own behalf as insurer of deposits and often as a creditor.

By an amendment to the Federal Deposit Insurance Act adopted in 1935, 49 Stat. 684, FDIC was authorized to enter into purchase and assumption agreements with respect to the assets of failing or closed banks. 12 U.S.C. § 1823(e).[1] Under this provision, FDIC may contract with another bank to have the latter assume the deposit and other liabilities and purchase the assets of the insolvent bank, and may lend the insolvent bank money in sufficient amount to bring the assumed liabilities and purchased assets into balance. FDIC may also make loans secured "by assets of an open or closed insured bank, which loans may be in subordination to the rights of depositors and other creditors," or may purchase such assets or guarantee the assuming bank against loss by reason of the purchase and assumption.

This case arose out of the insolvency of the Northern Ohio Bank (NOB). Before the insolvency, NOB made a loan to Gananda Development Corporation in which defendant Citizens participated to the extent of $348,000. Gananda defaulted on the loan. Thereafter, Citizens, contending that NOB had induced Citizens' participation by misrepresentations concerning collateral and had failed to obtain collateral after agreeing to do so, attempted to negotiate with NOB for the return of the $348,000.

NOB maintained a correspondent account with Citizens, which at the time of the Gananda default was in the amount of $300,868.84. In the ensuing months this balance remained unchanged, and Citizens sent monthly statements to NOB accordingly.

On Friday, February 14, 1975, the Superintendent of Banks for the State of Ohio took possession of NOB and appointed FDIC as its receiver. On Monday, February 17, 1975, FDIC filed an ex parte petition in an Ohio court seeking approval of the purchase and assumption transaction contested in this suit, and the court granted the petition.

This transaction was reflected in two contracts, one between FDIC as receiver and National City Bank of Cleveland and the other between FDIC as receiver and itself in its corporate capacity. By the first, National City Bank purchased from the receiver certain "acceptable" NOB assets, consisting of cash, deposits in other banks, and certain "other assets of sound banking quality," and assumed NOB's deposit liabilities and certain other liabilities. National City Bank paid $3,750,000 for the value of the ongoing business of NOB. By the second contract, FDIC in its corporate capacity purchased from itself as receiver the other assets of NOB, which were generally described as assets carried on the books of NOB at an amount greater than their actual value and unacceptable to the assuming bank, for $90,250,000, which sum was included in the assets turned over to National City Bank. Under the second contract FDIC in its corporate capacity was to retain all net recoveries from the assets assigned to it until it had recovered the $90,250,000, costs of liquidation, and 6½ per cent interest on the unrecovered balance of the $90,250,000 calculated monthly.

The Gananda loan was among the "unacceptable" assets transferred by the second contract to FDIC in its corporate capacity, as was, for reasons FDIC has never explained, NOB's balance in the correspondent account with Citizens. The purchase and assumption transaction effectively left the receivership estate without assets of value or prospect of receiving any. This, in turn, had the effect of preventing recovery by Citizens and any other creditors to whom National City Bank did not assume liability.

---

1. The power was initially granted until July 1, 1936, was extended until July 1, 1938, 49 Stat. 1237 (1936), and was subsequently made permanent, 52 Stat. 767 (1938). The section was amended in 1950 to add the second paragraph, which is not involved in this case. 64 Stat. 873.

On March 12, 1975, FDIC, apparently as receiver,[2] wrote to Citizens demanding payment of the balance in NOB's correspondent account. In its letter in response, Citizens refused to comply with the demand, stating that it might set off FDIC's claim against its tort claim against NOB. In another letter to FDIC dated May 27, 1975, Citizens asserted its claim that NOB was liable to Citizens in the amount of $348,000 by reason of the Gananda transaction and stated that it had set off the correspondent account balance of $300,868.84.

On August 19, 1975, FDIC, in its corporate capacity, brought the instant action against Citizens in the Northern District of Illinois, where Citizens operates its banking business, to recover the $300,868.84. Thereafter Citizens filed a timely claim against FDIC as receiver, which rejected the claim. Answering the complaint in this action, Citizens challenged jurisdiction, and asserted affirmative defenses, including fraud, breach of contract, and negligence on the part of NOB in the Gananda loan transaction, which entitled it to a set-off in the amount claimed by FDIC. Citizens also counterclaimed for the approximately $48,-000 difference between the amount of its participation in the Gananda loan transaction and the amount of the set-off. In addition Citizens moved to transfer the case to the Northern District of Ohio under 28 U.S.C. § 1404(a).

The District Court denied Citizens' motion to transfer and granted FDIC's motion to strike the affirmative defenses and counterclaims. Shortly thereafter, the court, on FDIC's motion, entered summary judgment against Citizens, from which it appeals. We affirm the judgment.

## I.

Citizens argues that the District Court did not have jurisdiction over this case because 12 U.S.C. § 1819 Fourth, which provides that FDIC may sue and be sued and vests jurisdiction over "[a]ll suits of a civil

nature at common law or in equity to which the Corporation [FDIC] shall be a party" in the United States District Court, excepts from that jurisdiction suits to which FDIC is a party in its capacity as receiver of a state bank and which involve only the rights or obligations of creditors and the state bank under state law. Citizens' characterization of this suit as one which falls within this exception rests entirely on *FDIC v. Ashley*, 408 F.Supp. 591 (E.D.Mich.1976), which was reversed on appeal after oral argument in the case at bar, *FDIC v. Ashley*, 585 F.2d 157 (6th Cir., 1978).

In its opinion the Sixth Circuit analyzed § 1819 Fourth in detail and concluded that the dual roles created for FDIC by Congress should not be ignored for purposes of jurisdiction. *Id.*, at 160–162. The Sixth Circuit was not persuaded by the argument that because the purchase and assumption transaction required FDIC in its corporate capacity to return to FDIC as receiver sums recovered in excess of the purchase price it had paid the receivership for the "unacceptable assets," it was doing no more than acting as a receiver. The court pointed out that FDIC bore the risk of loss as to recovery on the "unacceptable assets." *Id.*, at 163. Furthermore, FDIC did not participate in the assignment for the purpose of creating federal jurisdiction.

We agree with the Sixth Circuit. *See also, FDIC v. Godshall*, 558 F.2d 220 (4th Cir. 1976), and *FDIC v. Abraham*, 439 F.Supp. 1150 (E.D.La.1977). The District Court here correctly determined that federal jurisdiction exists.

## II.

Citizens claiming error in the denial of its motion to transfer under 28 U.S.C. § 1404(a), points to the pendency in the Northern District of Ohio of nine other cases arising from the same bank receivership. FDIC as receiver and in its corporate capacity is a party in most of these cases,

---

**2.** The copy of the letter in the record shows it to have been signed "William S. Bryant, Liquidator." Bryant signed in this way for FDIC as receiver in the contracts reflecting the purchase and assumption transaction.

and Citizens was a party in two of them at the time of its motion and is still a party in one. Some of the cases, according to Citizens, present the same banking law issues that are presented in the case at bar. FDIC asserts that there is some doubt about whether Citizens could have been served in Ohio, although Citizens says it could have been. We shall not resolve that dispute. It is enough that it is not insubstantial and that there are other considerations militating against transfer.

■ Citizens does not contend that the Northern District of Illinois, where it maintains its place of business, is an inconvenient forum. Although Citizens asserts that the witnesses it needs to call and much of the evidence is located in Ohio, FDIC asserts that the witnesses it will need to examine are officers and employees of Citizens, who are in Illinois. Under these circumstances the convenience of parties and witnesses does not weigh in favor of transfer. *Marbury-Pattillo Construction Co. v. Bayside Warehouse Co.,* 490 F.2d 155 (5th Cir. 1974).

■ Finally, the trial court must give some weight to the plaintiff's choice of forum. *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). That factor, together with the fact that Citizens is at home in the Northern District of Illinois and the absence of any compelling reason for transfer makes it impossible for us to say that the trial court abused its broad discretion under 28 U.S.C. § 1404(a) in denying the motion to transfer.

### III.

FDIC argues that it is immune from the claim Citizens attempts to assert by set-off and counterclaim, because the claim is in tort and therefore the exclusive remedy, if any remedy exists, would be under the Federal Tort Claims Act, and that Act has withdrawn any previously existing waiver of immunity with respect to claims of the

kind Citizens seeks to assert.[3] Our determination of the issue thus raised must begin with an analysis of the nature of Citizens' claim.

Citizens insists that its claim does not sound in tort and therefore is not subject to the Federal Tort Claims Act. Thus it says,

Citizens does not allege a tort committed by a government agency or its employee. Citizens does claim that NOB committed fraud, negligence and/or breach of contract in obtaining Citizens participation in the Gananda loan and that the FDIC as successor in interest to NOB and as the alleged owner of all of the assets of NOB, is subject to Citizens right of set off and answerable for the remainder of the loss of Citizens. Clearly Citizens' claims are contract claims.

■ Citizens does not suggest any theory or cite any authority for its assertion that FDIC in its corporate capacity is "successor in interest to NOB" and that because FDIC in that capacity acquired certain of NOB's assets it is liable on Citizens' claim against NOB. FDIC in its corporate capacity accepted an assignment of the assets of the receivership that were not assigned to City National Bank, including the claim against Citizens and the claim against Gananda. FDIC is merely an assignee of those claims. It assumed no liabilities of the receivership and entered into no contract with Citizens. There is accordingly no basis for Citizens' assertion that its counterclaim against FDIC is a contract claim.

■ That Citizens' claim is in tort is apparent from an analysis of the facts and the applicable law; if Citizens is right in its interpretation of § 1823(e), an interpretation which the Ninth Circuit has adopted in *First Empire Bank v. FDIC,* 572 F.2d 1361, *cert. denied,* —— U.S. ——, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), FDIC in its capacity as receiver had a duty to accord creditors of NOB their right to pro rata distribution, a

---

**3.** Citizens has not complied with the prerequisite to suit imposed by the Act, which in itself would be a ground for dismissal of this action if the Act applies, but that point becomes academic in light of our holding that the Act immunizes FDIC altogether from claims of the kind involved here.

right which in the case at bar derives from state law.[4] Furthermore, FDIC may very well have had a duty as receiver to protect Citizens' right to a set-off against the receivership estate's claim against Citizens. Assuming that these duties existed, FDIC breached them. Absent sovereign immunity, it would be liable for that breach, as any other corporate receiver would be, in its corporate capacity. Liability for breach of a duty imposed by statute or case law and not by contract is in tort.

This conclusion would end the matter if we held Citizens strictly to the theory it argued before us. Despite its disclaimer quoted above, however Citizens has also argued that FDIC acted wrongfully in exceeding its statutory authority, thereby depriving Citizens of its right to share pro rata with other creditors, and has relied upon the Ninth Circuit's *First Empire Bank* decision. FDIC in its brief correctly analyzes Citizens' claim as one based on FDIC's alleged tort and treats it as such. For these reasons, and because the facts supporting a tort claim are properly before us, we consider Citizens to be asserting a claim based on FDIC's tort and proceed to consider whether such a claim can be asserted.

■ Before the adoption of the Federal Tort Claims Act, FDIC would have been amenable to suit on a claim such as Citizens' by reason of the sue-and-be-sued language in 12 U.S.C. § 1819 Fourth. *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 388–389, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940). As the *Keifer* decision pointed out, whether a governmental corporation shares the government's immunity depends on whether Congress has chosen to so provide, and sue-and-be-sued clauses such as those contained in § 1819 Fourth were held to be waivers of immunity in *Keifer*

and subsequent cases. 306 U.S. at 388–389, 59 S.Ct. 516.

The Federal Tort Claims Act modified the sue-and-be-sued doctrine by making a suit under the Act the exclusive remedy for any tort covered by the Act. The question is whether it also withdrew the sue-and-be-sued waiver of sovereign immunity for torts excepted from the Act. All the courts that have specifically addressed the question, except ours, have held that it did.

The relevant statutory language appears in three sections of the Act, 28 U.S.C. §§ 1346(b), 2679(a), and 2680. The pertinent portions of those sections are as follows:

Section 1346(b)—

. . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury, or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Section 2679(a)—

The authority of any federal agency [5] to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

Section 2680—

The provisions of this chapter [ch. 171, §§ 2671–2680] and section 1346(b) of this title shall not apply to—

---

4. *See Busher v. Fulton,* 128 Ohio St. 485, 191 N.E. 752 (1934), together with 12 U.S.C. §§ 1819 and 1821(g) and Ohio Rev.Code § 1113.05(M) (Page). In the *First Empire Bank* case the pro rata distribution rule was supplied by federal law because a national bank was involved.

5. FDIC is unquestionably a "federal agency" within the meaning of § 2679(a). *Safeway Portland Employees' Federal Credit Union v. FDIC,* 506 F.2d 1213, 1215 (9th Cir. 1974).

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . .

. . . . .

Arguably, a claim such as Citizens, although it would be cognizable under § 1346(b) in the absence of § 2680(a), falls within that exception[6] and is therefore not cognizable under § 1346(b); and, because it is not, § 2679(a) does not make the remedy provided by § 1346(a) exclusive.

The federal courts, however, with the exceptions noted below, have held otherwise. The Second, Tenth, and District of Columbia Circuits and district courts in several other circuits have held that the suability of sue-and-be-sued federal agencies and corporations is now governed solely by the Federal Tort Claims Act, and that governmental immunity extends to classes of torts excepted from the coverage of that Act. *Edelman v. FHA,* 382 F.2d 594, 596 (2d Cir. 1967); *Freeling v. FDIC,* 221 F.Supp. 955 (W.D.Okl.1962), *aff'd,* 326 F.2d 971 (10th Cir. 1963); *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute,* 184 U.S.App.D.C. 397, 566 F.2d 289, 295–299 (D.C.Cir.1977); *Davis v. FDIC,* 369 F.Supp. 277, 279–280 (D.Colo.1974); *Crockett v. Citizens and Southern Financial Corp.,* 349 F.Supp. 1104, 1105 (N.D.Ga.1972); *Magellsen v. FDIC,* 341 F.Supp. 1031, 1033–1034 (D.Mont.1972); *Mullins v. First National Exchange Bank,* 275 F.Supp. 712, 719–720 (W.D.Va.1967); *United States v. Delta Industries, Inc.,* 275 F.Supp. 934, 936–937 (N.D.Ohio 1966), and *James v. FDIC,* 231 F.Supp. 475, 477 (W.D.La.1964). The Ninth Circuit aligned itself with these other circuits in a carefully reasoned opinion in 1974, *Safeway Portland E. F. C. U. v. FDIC,* 506

F.2d 1213 (9th Cir. 1974), but reached an arguably contrary result recently in *First Empire Bank v. FDIC, supra,* without even mentioning the problem of suability of FDIC or its earlier *Safeway Portland* decision.

Our own decision in *FSLIC v. Quinn,* 419 F.2d 1014, 1017–1018 (1969), while it rests on the sovereign immunity of the governmental corporation without mentioning the Federal Tort Claims Act, is consistent with these cases. Recently, in *Colonial Bank & Trust Co. v. American Bankshares Corp.,* 439 F.Supp. 797, 802–803 (E.D.Wis.1977), Judge Warren followed the above line of cases, citing *Freeling* and *Safeway Portland,* and held FDIC immune against a tort action falling within the exception provision of 28 U.S.C. § 2680(h).[7]

In *Baker v. F&F Investment Co.,* 489 F.2d 829, 835–836 (7th Cir. 1973), however, this court expressed a view in conflict with the uniform decisions of other circuits, without mentioning those decisions. The actual holding in *Baker* was that a claim under the Civil Rights Acts, 42 U.S.C. §§ 1981 and 1982, against federal sue-and-be-sued corporations and agencies was not barred by the Federal Tort Claims Act. The court reasoned that because the claim arose under federal law it was not within the ambit of the Act, citing *United States v. Smith,* 324 F.2d 622, 625 (5th Cir. 1963), and *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950), a holding which has no application here and which therefore need not be considered further.[8] The court went on to say, however, that even if a claim arising under state law had been alleged, it would have been within the interference-with-contract-right exception to the Federal Tort Claims Act, 28

---

**6.** Citizens' claim is based upon the acts of FDIC in the execution of 12 U.S.C. § 1823(e). If FDIC did commit a tort, it resulted from a misinterpretation of § 1823(e), not from acting without due care.

**7.** The court did not mention *Baker v. F&F Investment Co.,* discussed in the text immediately following.

**8.** Compare the *Feres* case with *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). It should also be noted that the conduct alleged in *Baker,* like that in *Feres,* was not the kind of conduct a private person (see § 1346(b)) would ever have an opportunity to engage in, which suggests that Congress did not intend the Federal Tort Claims Act to apply. *Cf. Feres,* 340 U.S. at 141–142, 71 S.Ct. 153. A private person could, of course, be a receiver of a state bank.

U.S.C. § 2680(h), so §§ 1346(b) and 2679(a) would not limit the pre-Act sue-and-be-sued authority. This was a logical reading of the language of the Act, but one which, by reason of shortcomings in the briefs, was arrived at without the benefit of the relevant legislative history referred to below or the reasoning of other courts. The interpretation of the exclusive jurisdiction and exceptions provisions of the Act, for which the case has never been followed or even cited,[9] was at most alternative support for a result already reached on another ground and therefore unnecessary to the decision.

We do not lightly undertake to reexamine an earlier precedent of this circuit, even when it is in conflict with decisions of other circuits. The suability of a governmental corporation, however, is an issue of national law on which it is especially important that the law among the circuits should be uniform. It would be worse than incongruous if the vulnerability of a governmental corporation such as FDIC to a suit for tort depended upon the circuit in which the action was brought. Forum shopping would be encouraged, and transferability of cases under § 1404(a) and even under § 1406(a) of Title 28 would be inhibited. Especially when, as in *Baker,* our expression of opinion on such an issue was unnecessary to the decision and was made without adequate briefing, we have a duty to reexamine the matter.

Having now had the benefit of a review of the legislative history and a study of the decisions of other circuits, we hold that the waiver of immunity from tort liability of a federal agency or governmental corporation such as FDIC is defined in the Federal Tort Claims Act, and that sue-and-be-sued authority does not permit suit outside that Act for torts excepted from the coverage of that Act. In so holding we align this circuit with the decisions of all the courts in other circuits that have addressed the question.[10]

Those decisions rely on the apparent intent of Congress in adopting the Federal Tort Claims Act to define comprehensively the tort liability of the United States and its instrumentalities. As the Second Circuit said in *Edelman,*

[T]here is no basis for applying the exception more narrowly than the Act itself. Indeed, it defies common sense to argue that the intent of Congress was that while remedies for negligent torts had to be pursued subject to the limitations of the FTCA, remedies for intentional torts could be obtained outside of these limitations even though as to most agencies such suits were barred altogether.

382 F.2d at 597. More recently, in *Expeditions Unlimited, supra,* the District of Columbia Circuit said, referring to exception (h) in § 2680,

We conclude from the structure of the Tort Claims Act, and from the legislative reports accompanying its passage, that Congress probably did not intend to leave unaffected by the Act the categories of suits excepted by § 2680(h). While primarily seeking to expand governmental liability for torts, it appears to us that Congress also sought to systematize and centralize the immunity laws. . . . One evidence of this appears in § 2679(a) of the statute, which in essence renders ineffective any other laws allowing suit or creating remedies against an agency, where the actions "are cognizable under section 1346(b)." . . . Another evidence of this centralizing impulse appears

---

9. District Courts have relied on *Baker* as authority for the proposition that the Federal Tort Claims Act does not apply to tort claims based on federal law, *Blessing v. United States,* 447 F.Supp. 1160, 1186 n.37 (E.D.Pa.1978) and *Davis v. United States,* 395 F.Supp. 793, 795–796 (D.Neb.1975), and have cited it for its general discussion of *Keifer* and the sue-and-be-sued language as waiver of sovereign immunity, *e. g., United States v. American National Bank & Trust Co.,* 443 F.Supp. 167, 170 (N.D.Ill.1977)

and *Wright v. National Archives and Records Service,* 388 F.Supp. 1205, 1209 n.9 (D.Md. 1975). We have cited it for its discussion of 42 U.S.C. §§ 1981 and 1982. *E. g., City of Milwaukee v. Saxbe,* 546 F.2d 693, 703 (7th Cir. 1976).

10. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing in banc on the question ruled upon in the text.

in the context of exceptions clause § 2680(a). . . . This section sets forth the category of discretionary activity, for which immunity has traditionally been granted. That Congress bothered to include it in the exceptions section is consistent with the view that it meant to embody, within § 2680 all of the instances in which immunity is to exist under the statute. It seems to us an unreasonable conclusion, at least in the instances of exceptions (a) and (h), that Congress intended for courts to go beyond the Act, and inquire into common law immunity status and alternative jurisdictional grounds.

566 F.2d at 297–298 (footnotes omitted). It will be recalled that it is exception (a) that describes Citizens' claim.

The courts have also been influenced by some rather specific language appearing in both the House and Senate Reports[11] on the bill that became the Federal Tort Claims Act:

This will place torts of "suable" agencies of the United States upon precisely the same footing as torts of "nonsuable" agencies. In both cases, the suits would be against the United States, subject to the limitations and safeguards of the bill; and in both cases the exceptions of the bill would apply either by way of preventing recovery at all or by way of leaving recovery to some other act, as, for example, the suits in Admiralty Act. It is intended that neither corporate status nor "sue and be sued" clause shall, alone, be the basis for suits for money recovery sounding in tort.

We agree with the District of Columbia Circuit that it is

likely that Congress conceived of itself as codifying the immunity law, and eliminating any necessity to look at the common law, once it is concluded that the defendant is a federal agency within the definition of the Act.

566 F.2d at 298. We accordingly adopt what

has been the consistent practice of the federal courts to read both exceptions (a) and (h) as defining grants of immunity to "federal agencies."

Id. at 298–299.

We are unable to view the Ninth Circuit's recent First Empire Bank decision as a deliberate overruling of the earlier explicit and carefully reasoned holding in Safeway Portland that the Federal Tort Claims Act is the measure of Congress' waiver of sovereign immunity in tort for FDIC and other government instrumentalities. Although it appears from an examination of the briefs in First Empire Bank that FDIC raised the immunity issue and argued that it could only be held liable in tort pursuant to the Federal Tort Claims Act, the court in its opinion completely ignored the issue so raised and held FDIC liable without even mentioning the immunity argument, the Federal Tort Claims Act, or the Safeway Portland decision. It would appear likely that the reason for this is that the court accepted the argument made in the claimants' reply brief based on the holding of this court in Baker v. F&F Investment that a tort claim arising under federal law is not subject to the Act.[12] As we have noted, the Baker case has been cited by other courts for that holding.[13] Under all the circumstances, we are of the opinion that the First Empire Bank decision was not intended to overrule or erode the Ninth Circuit's Safeway Portland holding.

■ FDIC's immunity is not limited to actions instituted by claimants. The corpo-

---

11. H.R.Rep.No.1287, 79th Cong., 1st Sess. 6 (1945); S.Rep.No.1400, 79th Cong., 2d Sess. 33–34 (1946).

12. This argument is not available to Citizens in the case at bar, because NOB was a state bank and, as we have noted, the tort claim against FDIC therefore arose under state law. See also note 8, supra.

13. See note 9, supra. The Baker case has not, as pointed out in the text accompanying note 9, been cited for its interpretation of the exclusive jurisdiction and exceptions provisions of the Federal Tort Claims Act, and the reply brief in First Empire Bank did not refer to that interpretation.

ration did not waive its sovereign immunity by filing this action against Citizens except with respect to "matters in recoupment arising out of the same transaction or occurrence which is the subject matter of the suit, to the extent of defeating the plaintiff's claim." *FSLIC v. Quinn, supra,* 419 F.2d at 1017; *Frederick v. United States,* 386 F.2d 481, 487–488 (5th Cir. 1967); 3 *J. Moore's Federal Practice* ¶ 13.29, p. 13–751 (2d ed. 1978). Justice Jackson said of the doctrine of recoupment in *Rothensies v. Electric Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946),

> It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects and judgment to be rendered that does justice in view of the one transaction as a whole.

The transaction which is the subject of Citizens' claim, *viz.,* FDIC's wrongful transfer, as receiver, of assets of NOB to itself in its corporate capacity, is not an aspect of NOB's deposit of funds in the correspondent account in Citizens, which is the subject of FDIC's suit against Citizens. Only if the assignment by which FDIC acquired its title to the claim could also be considered a transaction which is the subject of FDIC's suit could recoupment be allowed. We can find no case which directly or by analogy supports such an expansion of the narrow limits of the doctrine of recoupment. We think the transaction which that doctrine permits "to be examined in all its aspects" is the substantive transaction creating the claim, and does not include an assignment by which the plaintiff acquires ownership of the claim. The doctrine of recoupment is therefore inapplicable.

What we have said renders it unnecessary for us to reach the banking law question which the parties have extensively briefed and which the Ninth Circuit decided in the *First Empire Bank* case. It may well be that FDIC has violated Citizens' rights as a creditor by entering into and executing a purchase and assumption transaction in which the claims of other creditors were preferred over Citizens' claim and no assets were left in the receivership estate from which Citizens can satisfy its claim. The doctrine of sovereign immunity, however, by its very nature, disallows just claims against the sovereign and its instrumentalities.

The judgment of the District Court is affirmed.

AFFIRMED.