# Information Sharing Between Supervisory Agencies Under the Right to Financial Privacy Act of 1978

The Office of the Comptroller of the Currency (OCC) may make available to the Federal Deposit Insurance Corporation (FDIC), in its capacity as a receiver of a failed national bank, OCC examination reports on that bank, notwithstanding the general prohibitions on disclosure in the Right to Financial Privacy Act of 1978. Such disclosure falls within two exceptions in that Act for information exchanges between government "supervisory" agencies, whether or not the FDIC is actually performing a "supervisory" function in its capacity as a receiver. 12 U.S.C. § 3412(d) and (e).

October 29, 1982

MEMORANDUM OPINION FOR THE CHIEF COUNSEL,
COMPTROLLER OF THE CURRENCY

This responds to your request for our opinion regarding the following question: May the Office of the Comptroller of the Currency (OCC) make available to the Federal Deposit Insurance Corporation (FDIC), in its capacity as a receiver of a failed bank, OCC reports of examination of that bank? You indicate that the OCC would like to provide the FDIC with OCC examination reports of banks that the FDIC, in its capacity as receiver of failed national banks, 12 U.S.C. § 1821(c), routinely requests. However, the OCC is concerned that, because such reports contain names and information about bank customers, such disclosure may be prohibited by the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422 (Supp. II 1978) (RFPA). We conclude that disclosure of OCC examination reports to the FDIC falls within a recently enacted amendment to the RFPA which excepts information exchanges between supervisory agencies of the Federal Financial Institutions Examination Council from the general prohibitions on information disclosure in that Act. Pub. L. No. 97–320, § 432(a), 96 Stat. 1469, 1527 (1982). We also believe that the exception in the RFPA for information exchanges between supervisory agencies, 12 U.S.C. § 3412(d), would permit disclosure of OCC examination reports to the FDIC.

## I. Background

*A. The Right to Financial Privacy Act*

The Right to Financial Privacy Act of 1978 was enacted in the wake of *United States* v. *Miller,* 425 U.S. 435 (1976), which held that a bank customer has no

595

protectable Fourth Amendment interest in information about his account in a bank's files.[1] The RFPA created a statutory right of privacy on behalf of a customer of a financial institution in the records of the institution pertaining to him or her. 12 U.S.C. §§ 3403, 3410. The RFPA prohibits financial institutions from providing any governmental authority access to, or copies of, information in the financial records of any customer unless the customer has authorized such disclosure or unless certain legal requirements—such as compliance with an administrative subpoena, search warrant or judicial subpoena—have been met. 12 U.S.C. § 3402. Certain exceptions authorize financial institutions to provide information relevant to possible violations of the law, 12 U.S.C. § 3403(c); to provide copies of records necessary to perfect a security interest, prove a claim in bankruptcy, or otherwise collect on a debt owing to the institution, 12 U.S.C. § 3403(d); and to disclose financial records in response to special enforcement needs, such as the conduct of foreign counter-intelligence activities, and in emergency situations. 12 U.S.C. § 3414.

The RFPA also prohibits the transfer from one government agency to another of financial records originally obtained in compliance with the requirements of the Act, unless the requesting agency certifies that there is reason to believe that the records are relevant to a legitimate law enforcement inquiry. 12 U.S.C. § 3412(a). However, there are two exceptions, important for present purposes, to this prohibition on exchange of information and financial records among government agencies. Section 3412(d) of the RFPA states in relevant part: "Nothing in this chapter prohibits any supervisory agency from exchanging examination reports or other information with another supervisory agency." A recent amendment further clarifies the permissibility of information exchanges among certain supervisory agencies. It provides that:

> Notwithstanding section 1101(6) or any other provision of this title, the exchange of financial records or other information with respect to a financial institution among and between the five member supervisory agencies of the Federal Financial Institutions Examination Council is permitted.

Pub. L. No. 97–320, § 432(a) (1982), to be codified at 12 U.S.C. § 3412(e).

Thus, supervisory agencies have a special status under the RFPA. Banks may provide these agencies with otherwise protected information under certain conditions, see 12 U.S.C. § 3413(b),[2] and supervisory agencies may exchange among themselves otherwise protected information concerning financial records. 12 U.S.C. § 3412(d),(e). For purposes of the RFPA generally, supervisory agencies are defined as follows:

> "supervisory agency" means, with respect to any particular financial institution any of the following which has statutory authority

---

[1] The Right to Financial Privacy Act was enacted as Title XI of the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub. L. No. 95–630, 92 Stat 3641.

[2] 12 U S.C. § 3413(b) authorizes disclosure of financial records or information to any supervisory agency "in the exercise of its supervisory, regulatory, or monetary functions with respect to a financial institution."

to examine the financial condition or business operations of that institution—

(A) the Federal Deposit Insurance Corporation;

(B) the Federal Savings and Loans Insurance Corporation;

(C) the Federal Home Loan Bank Board;

(D) the National Credit Union Administration;

(E) the Board of Governors of the Federal Reserve System;

(F) the Comptroller of the Currency;

(G) the Securities and Exchange Commission;

(H) the Secretary of the Treasury, with respect to the Bank Secrecy Act [12 U.S.C. 1951 et seq.] and the Currency and Foreign Transactions Reporting Act [31 U.S.C. 1051 et seq.] (Pub. L. No. 91–508, title I and II); or

(I) any State banking or securities department or agency;

12 U.S.C. § 3401(6). But under new 12 U.S.C. § 3412(e), the restrictive definition of "supervisory agency" in § 3401(6)—that is, an agency having "statutory authority to examine the financial condition or business operations of that [particular] institution"—is not applicable. Rather, new subsection (e) permits, without apparent qualification, exchanges of financial records and information between member agencies of the Federal Financial Institutions Examination Council (Council). Both the FDIC and the OCC are member agencies of the Council. 12 U.S.C. § 3302(1).[3]

Your request, in essence, focuses on whether the FDIC can be viewed as a "supervisory agency" as defined in § 3401(6) and employed in § 3412(d), or as a member agency of the Council for purposes of § 3412(e), when it is acting as a receiver of a closed national bank.

## B. *The FDIC as Corporation and as Receiver*

Under the Federal Deposit Insurance Act (FDIA), 12 U.S.C. §§ 1811–1832, *as amended* by the Deposit Insurance Flexibility Act, Pub. L. No. 97–320, the FDIC has the duty to insure to $100,000 each deposit made in national banks that are members of the Federal Reserve System. 12 U.S.C. §§ 1811, 1813(m), 1821(a), (f). The FDIC meets its responsibility as insurer from an insurance fund created from assessments paid by the insured banks. 12 U.S.C. §§ 1817, 1821(a). Whenever an insured bank is closed because of its inability to meet the

---

[3] The regulatory agencies represented in the Council are the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Federal Home Loan Bank Board, and the National Credit Union Administration 12 U.S C. § 3302(1).

demands of its depositors, the FDIC is obligated to make payment of the insured deposits in that bank as soon as possible. 12 U.S.C. § 1821(f). In exercising these duties, the FDIC is acting in its corporate capacity, as insurer of deposits. *See First Empire Bank* v. *FDIC*, 572 F.2d 1361, 1363–64 (9th Cir.), *cert. denied*, 439 U.S. 919 (1978).

The FDIC also must accept appointment as receiver of closed state banks if appointment is tendered and authorized by state law, 12 U.S.C. § 1821(e), and whenever the Comptroller of the Currency appoints a receiver for a closed national bank, he must appoint the FDIC. 12 U.S.C. § 1821(c). In its capacity as receiver of a closed national bank, the FDIC has the duty to "realize upon the assets of such closed bank . . .; to enforce the individual liability of the stockholders and directors thereof; and to wind up the affairs of such closed bank in conformity with the provisions of law relating to the liquidation of closed national banks, except as herein otherwise provided." 12 U.S.C. § 1821(d). Further, "[w]ith respect to any such closed bank, the Corporation as such receiver shall have all the rights, powers, and privileges now possessed by or hereafter granted by law to a receiver of a national bank or District bank and notwithstanding any other provision of law in the exercise of such rights, powers, and privileges the Corporation shall not be subject to the direction or supervision of the Secretary of the Treasury or the Comptroller of the Currency." *Id.*

As courts have noted, these various statutory responsibilities often place the FDIC in the position of acting in two capacities with respect to closed national banks: in its corporate capacity, as insurer of deposits, and in its capacity as a receiver. *See FDIC* v. *Lauterbach*, 626 F.2d 1327, 1330 n.4 (7th Cir. 1980); *FDIC* v. *Citizens Bank & Trust Co.*, 592 F.2d 364, 366 (7th Cir.), *cert. denied*, 444 U.S. 829 (1979); *First Empire Bank* v. *FDIC*, 572 U.S. at 1364. For purposes of federal jurisdiction, Congress has discriminated between the FDIC's dual capacity as federal insurer and *state* receiver by providing that any "suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States." 12 U.S.C. § 1819 Fourth. *Cf. FDIC* v. *Citizens Bank & Trust Co.*, 592 F.2d at 367 (federal jurisdiction exists because FDIC was acting in corporate capacity as assignee of certain assets from FDIC as receiver). While the FDIC therefore could be functioning solely in its capacity as receiver with respect to a particular closed bank, it frequently functions in its two roles simultaneously. *See FDIC* v. *Citizens Bank & Trust Co.*, 592 F.2d at 367 (FDIC acting in corporate capacity as assignee of certain assets from FDIC as receiver); *FDIC* v. *Ashley*, 585 F.2d 157, 163–164 (6th Cir. 1978) (same).

The recent amendments to the FDIA made by the Garn-St Germain Depository Institutions Act of 1982, Pub. L. No. 97–320, 96 Stat. 1469, increase the probability that the FDIC will be acting in both capacities with respect to national banks closed by the Comptroller of the Currency. The amendments expand the forms of financial assistance and the circumstances under which such assistance may be granted to closed or failing institutions. The FDIC has expanded powers

to facilitate mergers or acquisitions of closed or failing banks with insured institutions willing to purchase the assets and assume the liabilities of the closed or failing insured institution. *See* Pub. L. No. 97–320, § 111; H.R. Conf. Rep. 899, 97th Cong., 2d Sess. 85 (1982). Consequently, the FDIC will likely be in the position of dealing with itself as receiver and insurer in an increasing number of situations. It is in this context that Congress also enacted the amendment to the RFPA providing that notwithstanding any provision of the RFPA, "the exchange of financial records or other information with respect to a financial institution among and between the five member supervisory agencies of the Federal Financial Institutions Examination Council is permitted." Pub. L. No. 97–320, § 432(a). We note, initially, that not only will the FDIC be performing insuring, supervisory, and liquidating functions simultaneously, but also that Congress declined to distinguish between those roles for purposes of information sharing in this recent amendment.

## II. Statutory Analysis

Our starting point is, of course, the language of the statutory provision itself. *See Watt* v. *Alaska,* 451 U.S. 259, 265–66 (1981); *Rubin* v. *United States,* 449 U.S. 424, 429 (1981). We believe that Congress meant precisely what it said. That is, without condition or qualification, "[n]otwithstanding . . . any other provision of this [RFPA] title, the exchange of financial records or other information with respect to a financial institution among and between the five member supervisory agencies of the Federal Financial Institutions Examination Council is permitted." Pub. L. No. 97–320, § 432(a). Moreover, in construing a statute, a court is obliged, if possible, to give effect to every word Congress used. *Reiter* v. *Sonotone Corp.,* 442 U.S. 330, 339 (1979). For this new subsection to have any substantial meaning, it must be construed as a broad exemption permitting information exchange between the five agencies.

Prior to enactment of subsection (e), Congress had already provided in 12 U.S.C. § 3413(b) that: "Nothing in this chapter prohibits examination by or disclosure to any supervisory agency of financial records or information in the exercise of its supervisory, regulatory, or monetary functions with respect to a financial institution." Thus, access to financial records in conformity with § 3413(b) would appear to be conditioned on the exercise of a particular supervisory, regulatory, or monetary function by the involved supervisory agency. *See Electronic Funds Transfer and Financial Privacy, Hearings on S. 2096, S. 2293, S. 1460 Before the Subcomm. on Financial Institutions of the Senate Comm. on Banking, Housing, and Urban Affairs,* 95th Cong., 2d Sess. 416, 419 (1978) (Letter to Honorable William Proxmire, Chairman, Committee on Banking, Housing, and Urban Affairs from George Lemaistre, Chairman, FDIC, questioning whether exemption as presently worded was adequate to cover the FDIC when acting in its insuring or liquidating functions) [hereinafter *Hearings*].[4] In

---

[4] The internal legal memorandum of April 28, 1982, from your Office relied on this subsection and its legislative history in concluding that none of the exceptions in the RFPA permit disclosure of OCC examination reports to the FDIC in its capacity as receiver That memorandum concluded "that principles of logic require that some concept of regulatory functions must be read into the [existing RFPA] exemption." Apr. 28, 1982, Memorandum at 4.

light of more pertinent statutory exemptions, however, we need not reach the question whether the FDIC is acting in a "supervisory, regulatory, or monetary function" when it acts as receiver of a closed national bank.[5]

Congress had further provided in subsection (d) of § 3412 for the exchange of information between supervisory agencies, presumably as defined in § 3401(6). Under the § 3412(d) exemption then, a supervisory agency must have "statutory authority to examine the financial condition or business operations of [an] institution," 12 U.S.C. § 3401(6), in order to obtain examination reports from another supervisory agency without complying with the RFPA's notice procedures. The FDIC does have statutory authority to examine national banks and any closed insured bank. 12 U.S.C. § 1820(b). It is also granted access to any examination reports made by the Comptroller of the Currency. 12 U.S.C. § 1817(a)(2). Nothing in § 3401(6) or § 3412(d) indicates that the FDIC's statutory authority to examine national banks ceases when it functions as a receiver. Based on the plain language of the statute, we conclude that § 3412(d) authorizes the FDIC to obtain access to OCC examination reports.[6]

Any questions whether the FDIC is permitted access to OCC reports were, we believe, answered by enactment of § 3412(e). If new subsection (e) is to mean anything, it must be interpreted as permitting exchanges of examination reports between the five member agencies of the Council regardless whether they are acting in any particular "supervisory, regulatory, or monetary functions," *see* § 3413(b), or whether they have "statutory authority to examine the financial condition or business operations of [a particular] institution." *See* § 3401(6).[7] Because the OCC did not have statutory authority to examine state banks, this new amendment undoubtedly is designed to ensure OCC access, wherever necessary, to such examination reports. The five agencies on the Council previously had access to each others' reports and records for purposes of carrying out their supervisory and reporting duties under the Federal Financial Institutions Examination Council Act of 1978. 12 U.S.C. § 3308. But if the new amendment broadened the OCC's ability to obtain reports concerning institutions it had no existing statutory authority to examine irrespective of the particular supervisory or regulatory purpose involved, it concomitantly broadened and clarified the FDIC's access rights to other agencies' reports in instances where its statutory authority may have been questionable. Thus, even were one to maintain that the FDIC's statutory authority to examine national banks did not extend beyond the

___

[5] Indeed, given Congress' refusal to enact language suggested by the FDIC that would have clarified its authority to have access to reports under § 3413(b) when acting as receiver, we are reluctant to conclude that § 3413(b) is the proper basis for such authority. *See Hearings* at 416, 419, 476

[6] We have also examined the legislative history of 12 U.S.C. § 3412(d) and find nothing which conflicts with what we perceive to be the plain meaning of subsection (d). *See Hearings* at 424, 449–50 (statement and accompanying memorandum of Philip E. Coldwell, Member, Board of Governors of the Federal Reserve System) (recommending language of § 3412(d) to permit information sharing among supervisory agencies and noting that FDIC has statutory authority to obtain information and reports), 124 Cong. Rec. 33838 (1978) (statement of Rep. Goldwater) (offering amendment, the present § 3412 statutory language, and commenting that prohibitions in RFPA would "not apply to supervisory agencies properly conducting their responsibilities  . . ")

[7] Neither the conference report, H R Conf. Rep. 899, 97th Cong., 2d Sess. (1982), nor the earlier House report, H.R. Rep. No. 550, 97th Cong., 2d Sess. (1982) accompanying H R. 6267, which became the Garn-St Germain Depository Institutions Act of 1982, Pub. L. No. 97–320, explain further this amendment to the RFPA.

insuring duties it performed in its corporate capacity and therefore under § 3412(d) the FDIC was prohibited from obtaining access to such reports when functioning as a receiver, the recent amendment to § 3412 must be read as permitting access to OCC reports by the FDIC regardless of what particular function it is performing.[8]

The RFPA was one title among twenty in an omnibus statute primarily concerned with strengthening the powers of supervisory agencies.[9] Similarly, the recent amendment to the RFPA was one provision of a comprehensive statute aimed at revitalizing the housing industry by strengthening the financial stability of lending institutions and enhancing the ability of the FDIC to aid failing or failed institutions. H.R. Conf. Rep. 899, 97th Cong., 2d Sess. 1, 85 (1982). It would be anomalous to conclude that statutes intended to strengthen the supervisory agencies' ability to regulate and stabilize financial institutions contained information sharing exemptions insufficient to accomplish those purposes.

We therefore conclude that the OCC is permitted to exchange examination reports of closed national banks with the FDIC.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] In addition, several practical considerations militate in favor of interpreting § 3412(d) and (e) to permit FDIC access to OCC examination reports. As noted above, in many instances the FDIC acts in the dual role of receiver and regulator/insurer with respect to closed national banks. It would be anomalous for the FDIC to have access to OCC examination reports when acting as insurer as well as receiver but not when acting solely as receiver. Indeed, were such a distinction imposed, the FDIC might be accused at times of asserting that it was functioning as an insurer solely to obtain access to examination reports. As we understand the facts, the FDIC also has routine access to examination reports of state banks When a state bank fails, the FDIC does not divide itself institutionally and, as receiver, act as if those examination reports do not exist It is thus only with respect to closed national banks that access authority has been questioned. We think it unlikely that Congress intended the FDIC to have access to examination reports of closed state banks but not the reports of closed national banks

[9] *See* Pub L. No 95–630, 92 Stat 3641, Financial Institutions Regulatory and Interest Rate Control Act of 1978, Title I (upgrade machinery of Federal financial regulation); Title VI (power of supervisory agencies to monitor takeovers of federally insured institutions), Title IX (disclosure to supervisory agencies of material facts on bank activities and officials); Title X (establishment of Federal Financial Institutions Examination Council). *See generally* H.R. Rep. No. 1383, 95th Cong., 2d Sess. 1–35 (1978).