293 F.2d 333
 Mary V. BECK, Individually and as a Trustee for the People of Detroit, Michigan, as President and a Member of the Common Council of the City of Detroit, Plaintiff-Appellant,
v.
Louis C. MIRIANI, Mayor of the City of Detroit, Eugene I. Van Antwerp, Blanch Parent Wise, William T. Patrick, Jr., William T. Rogell, and Edward Carey, as Members of the Common Council of the City of Detroit, and Trustees for the People of Detroit, Michigan, and The United States of America, Defendants-Appellees.
Undocketed.
 United States Court of Appeals Sixth Circuit.
 July 3, 1961.
 
 Frank C. Sibley, Detroit, Mich., for plaintiff-appellant.
 Nathaniel H. Goldstick, Vance G. Ingalls, John D. O'Hair, Detroit, Mich., for defendants-appellees except the United States.
 Lawrence Gubow, U. S. Atty., Detroit, Mich., for the United States.
 Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.
 CECIL, Circuit Judge.
 
 
 1
 This action involves a plot of land in the city of Detroit, Michigan, described as being bounded by Woodward Avenue, Michigan Avenue, Griswold Street and Fort Street, a part of the Campus Martius, lying westerly of Woodward Avenue, and a building on such land that has come to be known as "Old City Hall."
 
 
 2
 The action was begun by Mary V. Beck, plaintiff and appellant, who filed a complaint in the United States District Court, for the Eastern District of Michigan, Southern Division. Being the president and a member of the Common Council of the city of Detroit, she brought the action individually and as trustee for the people of Detroit. The defendants are the United States of America, the mayor of the city of Detroit and five members of the Common Council, who are sued as members of the Common Council and as trustees for the people of Detroit. The United States is made a party by reason of having an alleged potential reversionary interest in the land.
 
 
 3
 The action is in the nature of one for a declaratory judgment. The plaintiff seeks a determination of the rights of the city of Detroit and the present and contingent right of the United States in and to the property in question. She further seeks an injunction restraining the defendants, their agents, employees or anyone acting under or subject to their authority, from doing any act to demolish, raze or disturb in any way "Old City Hall."
 
 
 4
 Jurisdiction is invoked under Section 1331(a) of Title 28, U.S.C. This section provides, "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
 
 
 5
 It is claimed that two acts of Congress are required to be construed, viz., 1. "An Act to provide for the adjustment of titles of land in the town of Detroit and territory of Michigan, and for other purposes."[1] (1806) and 2. "An act supplementary to `An act to provide for the adjustment of titles to land in the town of Detroit, and Territory of Michigan, and for other purposes,' passed April twenty-one, eighteen hundred and six."[2] (1842) By the Act of 1842, it was provided that the mayor, recorder and aldermen of the city of Detroit were to act as a land board and to succeed to all of the powers and rights given to the governor and judges by the Act of 1806.
 
 
 6
 It is alleged in the complaint that the land upon which rests the "Old City Hall" was deeded to the city in 1860 by the mayor and aldermen, acting as a land board under authority of the Act of 1842. This deed contained a provision "* * * that this Board do issue a trust deed of said portion of said Campus Martius to the City of Detroit, upon the trust that said City shall erect thereon and forever maintain a City Hall for municipal purposes, and for the holding of City, County and State courts, and the public offices connected therewith, and shall use the premises for no other purpose whatsoever." The plaintiff says that the city, by proper resolution of March 14, 1860, accepted the deed, "in pursuance of the terms of trust and restricted purpose therefor as to the use of said land expressed in said deed."
 
 
 7
 It is further alleged that the present mayor and members of the Common Council are successors to the land board created by the Act of 1842 and as such are now trustees of the people of Detroit for the purpose of enforcing the restrictive clause of the deed.
 
 
 8
 In 1871 the city of Detroit erected the structure in question, which has been continuously used as a city building. Some of the departments of city government have moved to a new city-county building but others still remain in the old building and the plaintiff says it has many available uses.
 
 
 9
 The action now before us on appeal was commenced by reason of a resolution adopted at a meeting of the Common Council on January 10, 1961, ordering the razing, demolition, and destruction of the building. The resolution was passed by a five to four vote, the plaintiff and three members of the Council being opposed to it and the five defendant members favoring it.
 
 
 10
 The plaintiff claims that the acceptance of the deed by resolution of the city of Detroit constitutes a pact between the city and the United States and that neither can abrogate it without the consent of the other.
 
 
 11
 The plaintiff is apprehensive that abandonment of the building for governmental purposes may cause the land to revert to the United States and thus be lost to the city of Detroit. Her purposes in maintaining the building are threefold: aesthetic, historical and availability for continued governmental use. She says in her complaint it is of French Renaissance architecture, designed by a renowned architect and has achieved national recognition as a unique historical building. It represents historical acts, incidents and occurrences which have contributed to the growth and development of the city and its use and facility are important and necessary to the people of Detroit.
 
 
 12
 The matter now comes before this Court on motions of the parties. The motion of the plaintiff is for an order to require the mayor and defendant members of the Common Council to show cause why an order restraining them from proceeding with the demolition of the building should not issue. The motion of the United States is to be dismissed as a party defendant.
 
 
 13
 The District Judge having dismissed the complaint for want of jurisdiction, the defendants, other than the United States, move for a dismissal of the appeal for the reason that the District Court had no jurisdiction of the subject matter of the action.
 
 
 14
 At the outset we are confronted with the question of whether the District Court had jurisdiction to hear and determine the claims made in the complaint. The question of the court's jurisdiction of the subject matter of an action may be raised at any time.
 
 
 15
 "On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." Mansfield, Coldwater & Lake Michigan R. R. Co. and another v. Swan and another, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L. Ed. 462. See also: Louisville and Nashville R. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126; Texaco-Cities Service Pipe Line Company v. Aetna Casualty & Surety Company, 8 Cir., 283 F.2d 144.
 
 
 16
 Chief Judge Miller of this Court, in a recent opinion, set forth the controlling principles required in an action seeking to invoke the jurisdiction of a Federal Court under Section 1331(a) of Title 28 U.S.C.
 
 
 17
 "It is well settled that a case may be said to arise under the Constitution or laws of the United States whenever its correct decision depends upon the construction of either, or when the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction. Otherwise, not. (Citations omitted.)
 
 
 18
 "`A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.' (Citations omitted.)
 
 
 19
 "Whether jurisdiction exists must be determined from the complainant's statement of his own cause of action as set forth in his complaint, regardless of questions that may have been brought into the suit by the answer or in the course of the subsequent proceedings." (Citations omitted.) "A suggestion in the complaint that the defendant will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under the Constitution or those laws nor can the plaintiff's claim be aided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." (Citations omitted.) Shelby County, Tennessee v. Fairway Homes, Inc., 6 Cir., 285 F.2d 617, 618, 619. Pertinent authorities are cited in this case and we do not repeat them here.
 
 
 20
 A careful examination of the complaint discloses no claim or charge in it that requires the construction of either the 1806 or the 1842 Acts of Congress. Neither does the complaint allege in what manner the construction of those statutes is involved. There is only the conclusion of the pleader that they are required to be construed. The result does not depend upon the determination of a dispute or controversy respecting the validity, construction or effect of those laws.
 
 
 21
 The deed was granted under Sec. 3 of the Act of 1842. It provided "That any land or other property, real or personal, remaining, * * * is hereby vested in the said mayor, recorder and aldermen, * * * to be disposed of by them at their discretion to the best advantage; * * *" There is no question about the validity of the deed, the validity of the statute or the power of the mayor, recorder and aldermen to make the deed. The members of the land board exercised their discretion as they were authorized to do. The nature of the title they created is purely a local question for the courts of the state of Michigan. If a federal question develops at the trial and some right under a federal statute is denied, the party against whom the decision is made may apply to the Supreme Court for a writ of certiorari. Joy v. City of St. Louis, 201 U.S. 332, 343, 26 S.Ct. 478, 50 L.Ed. 776; Section 1257(3), Title 28 U.S.C.
 
 
 22
 Jurisdiction is not invoked by reason of the suggestion in the complaint that the United States may have some reversionary interest in the land. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194; Taylor v. Anderson, 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218; Shelby County, Tennessee v. Fairway Homes, Inc. supra.
 
 
 23
 Clearly, the plaintiff's statement of her own cause of action in her complaint is insufficient to invoke jurisdiction of the district court under Sec. 1331(a) of Title 28 U.S.C.
 
 
 24
 There being no jurisdiction in the district court, there is no basis for this Court to issue a restraining order and the motion of the plaintiff to show cause will be denied. For the same reason, the motions of the defendants to dismiss the appeal will be sustained.
 
 Appendix
 
 
 [1]
 "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the governor and the judges of the territory of Michigan shall be, and they, or any three of them, are hereby authorized to lay out a town, including the whole of the old town of Detroit, and ten thousand acres adjacent, excepting such parts as the President of the United States shall direct to be reserved for the use of the military department, and shall hear, examine, and finally adjust all claims to lots therein, and give deeds for the same. And to every person, or the legal representative or representatives of every person, who not owning or professing allegiance to any foreign power, and being above the age of seventeen years, did on the eleventh day of June, one thousand eight hundred and five, when the old town of Detroit was burnt, own or inhabit a house in the same, there shall be granted by the governor and the judges aforesaid, or any three of them, and where they shall judge most proper, a lot not exceeding the quantity of five thousand square feet.
 "Sec. 2. And be it further enacted, That the land remaining of the said ten thousand acres, after satisfying claims provided for by the preceding section, shall be disposed of by the governor and judges aforesaid, at their discretion, to the best advantage, who are hereby authorized to make deeds to purchasers thereof, and the proceeds of the lands so disposed of, shall be applied by the governor and judges aforesaid, towards building a courthouse and jail in the town of Detroit, and the said governor and judges are required to make a report to Congress, in writing, of their proceedings under this act.
 "Approved, April 21, 1806." 2 Stat. 398.
 
 
 [2]
 "Sec. 3. And be it further enacted, that any land or other property, real or personal, remaining, except the courthouse and jail erected under the act to which this is a supplement, after satisfying all just claims provided for in the first section of the act to which this is a supplement, is hereby vested in the said mayor, recorder, and aldermen, of the city of Detroit, to be disposed of by them at their discretion to the best advantage; and they are hereby authorized to make deeds to purchasers thereof, or other sufficient conveyances; and the proceeds of the land or other property effects or claims so disposed of, and of other rights and claims of the said governor and judges, shall, after the payment of all necessary expenses incurred in giving effect to said act and to this act and in the adoption of such measures as they may deem necessary for preserving in proper form the records and other evidences of the proceedings of said governor and judges, be applied by the said mayor, recorder and aldermen, to such object or objects of public improvement in said city, as the said mayor, recorder, and aldermen, may in council direct. And the said mayor, recorder and aldermen are hereby required to take an oath or affirmation for the faithful discharge of their duties under this act, and make a report to Congress, in writing, of their proceedings, on or before the first day of January, one thousand eight hundred and forty-four.
 
 
 
 25
 "Approved, August 29, 1842." 5 Stat. 541, 542.
 
 
 
 Notes:
 1. See Appendix.
 2. See Appendix.