PHILLIPS, Senior Circuit Judge.
This appeal involves a complex contractual dispute between the Federal Deposit Insurance Corporation and F & T Contractors, Inc., a bankrupt Michigan Corporation.
The FDIC is before the court in two capacities: (1) as an insurer of bank depositors (FDIC-corporation); and (2) as receiver of the insolvent Northern Ohio Bank, a State bank (FDIC-receiver). The FDIC was appointed receiver in the insolvency proceedings filed in the Common Pleas Court of Cuyahoga County, Ohio.
The FDIC, both as a corporation and as receiver of the Northern Ohio Bank, was found liable by the bankruptcy court for terminating letters of credit issued to the Northern Ohio Bank and for retaining the collateral securing the letters. See In re F & T Contractors, Inc., 17 B.R. 966 (Bkrtcy. E.D.Mich.1982).
This litigation had its genesis with the filing of a complaint in the bankruptcy court by the FDIC in its corporate capacity against F & T Contractors, Inc., and the receiver and trustee of the bankrupt corporation. The complaint alleged that, after the date of the filing of its Chapter XI proceedings, the bankrupt had used without payment of rent certain leased machinery and equipment in which FDIC owned a security interest and an assignment of rentals. The claim of the FDIC against the bankrupt was for delinquent rents.
David Cuvrell, as receiver and trustee for the bankrupt, answered the complaint and filed a counterclaim seeking recovery against the FDIC both in its capacity as a corporation and its capacity as receiver of the insolvent State bank, for terminating certain letters of credit issued by the insolvent Northern Ohio Bank and unlawfully retaining collateral securing the letters of credit. Following trial the bankruptcy court awarded the FDIC-corporation $152,-375.00 but found for the bankrupt on the counterclaim and awarded its receiver-trustee $761,112.02 against the FDIC. The FDIC appealed. Only the judgment against the FDIC on the counterclaim is involved in this appeal. No appeal was perfected from the judgment in favor of the FDIC for delinquent rent. -
We reverse the judgment of the bankruptcy court on the counterclaim on two grounds: (1) the bankruptcy court did not have jurisdiction to determine the issues against the FDIC-receiver; exclusive jurisdiction to adjudicate the matters stated in the counterclaim against FDIC-receiver is in the State Court of Common Pleas where the Northern Ohio Bank insolvency proceedings are pending and in which the FDIC was appointed receiver; and (2) the FDIC-corporation had no legal interest in the letters of credit and therefore could not be held liable in a contract action for wrongful termination of the letters or for retaining collateral securing the letters.
I.
F & T Contractors, a Michigan corporation, had done business since 1958 as a general contractor, engaging in the construction of residential, light commercial and apartment structures. On May 1, 1974, it entered into a contract with Old Orchard by the Bay Associates (Old Orchard) for the construction of a comprehensive apartment complex. Old Orchard is a Michigan limited partnership created by F & T Contractors’ president and others for purposes associated with this construction project, which was known as the Old Orchard by the Bay Project. The partnership acquired ownership of the real estate upon which the apartments were to be erected.
The Old Orchard by the Bay Project was financed with a Federal Housing and Urban Development insured mortgage extended to Old Orchard by Advance Mortgage Corporation, the construction lender. As a condition imposed by HUD to the issuance of the mortgage, three stand-by letters of credit were required to be procured by Old Orchard. In July 1974, Old Orchard applied *174 for and obtained three letters of credit from the Northern Ohio Bank located in Cleveland, Ohio:
1. Letter of Credit No. 1129, in the amount of $95,098, for the purpose of meeting any initial operating deficits caused by a failure timely to complete the project and generate sufficient rental income to meet the end mortgage amortization schedule and other operating expenses,
2. Letter of Credit No. 1130, in the amount of $172,365.62, for the purpose of guaranteeing the payment of the end mortgage commitment fee, and
3. Letter of Credit No. 1131, in the amount of $7,650, for the purpose of providing an escrow deposit for the construction of certain off-site improvements and roads.
17 B.R. at 969.
These letters were issued by the Northern Ohio Bank “for the account of Old Orchard by the Bay Associates,” with Advance Mortgage Corporation listed as beneficiary. They were secured by mortgage notes signed by Old Orchard as maker and F & T Contractors and F & T Investment as comakers, and also by mortgages executed by F & T Investment on certain real estate that it owned.
F & T Investment, a Michigan partnership, was an affiliate of F & T Contractors. Prior to the beginning of construction on the Old Orchard by the Bay Project, F & T Contractors had transferred its motor vehicles, equipment and fixtures to F & T Investment. Such items at various times were leased back to F & T Contractors for use in its construction projects. As previously indicated, F & T Investment also owned a substantial amount of real estate.
On July 2, 1974, construction began on the Old Orchard by the Bay Project. Most of the equipment used by F & T Contractors in the project was obtained from F & T Investment under a five year lease agreement.
On August 9, 1974, F & T Investment executed a promissory note to the Northern Ohio Bank for a $500,000 loan. The collateral given to the bank to secure this note was an assignment of rentals under the five year lease agreement between F & T Investment and F & T Contractors, along with a security interest in the vehicles, equipment, and fixtures that were the basis of that agreement.
On February 14, 1975, the Northern Ohio Bank was declared insolvent and, pursuant to state law, the Superintendent of Banks for the State of Ohio appointed the FDIC as receiver of the bank in a proceeding that commenced on the same day in the Court of Common Pleas of Cuyahoga County. See Ohio Rev.Code Ann. § 1113.04(B) (Page 1982 Supp.). As an alternative to closing the bank and paying depositors only to the extent of their deposit insurance, the FDIC-receiver put together a three-party transaction involving an assuming bank, National City Bank of Cleveland (National City Bank), and the FDIC in its corporate capacity, whereby all of the deposit liabilities of the insolvent bank would be protected. This transaction is reflected in four written agreements which were approved by the State Court of Common Pleas of Cuyahoga County in an order entered on February 17, 1975. In the Matter of the Liquidation of Northern Ohio Bank, Docket No. 75-939317 (Ct. of Common Pleas of Cuyahoga County, Ohio, February 17, 1975).
In one agreement, all of the insolvent bank’s “acceptable assets” (cash on hand, certain receivables due from other banks, government securities, and funds provided by FDIC-receiver itself) were sold to National City Bank. In return, National City Bank agreed to assume all of FDIC-insured deposit liabilities of the insolvent bank. In a second agreement, FDIC-receiver agreed to pay National City Bank a sum of cash equal to the difference between the value of the “acceptable assets” it had purchased and the amount of deposit liabilities it had assumed. In order to raise the funds necessary to consummate this transaction with National City Bank, FDIC-receiver entered into a third written agreement whereby it *175 sold the remainder of the insolvent bank’s identifiable assets (the “unacceptable assets”) to FDIC-corporation for $90,250,-000.00. Included in the “unacceptable assets” transferred to FDIC-corporation was the promissory note executed by F & T Investment to the insolvent bank secured by the rentals and collateral under the F & T Contractors — F & T Investment lease. In a fourth agreement, FDIC-corporation obligated itself to indemnify and hold National City Bank harmless from any liabilities that it had not specifically assumed in its agreement with FDIC-receiver.
In a letter dated February 19, 1975, FDIC-receiver notified Old Orchard that the letters of credit issued for its construction project had been cancelled as of February 14,1975. Two weeks later, Old Orchard made a demand upon FDIC to release the mortgaged real estate owned by F & T Investment, which had served as collateral for the letters of credit.
Shortly after notice was given that the letters of credit had been cancelled, construction at the Old Orchard by the Bay Project was halted. On March 5,1975, F & T Contractors filed a Chapter XI petition in bankruptcy court. David Cuvrell was appointed receiver and trustee. He was able to obtain alternative financing and recommenced completion of construction at the project site. The equipment leased by F & T Investment to F & T Contractors was retained for use in this construction, but no rental payments were made to either the insolvent bank or FDIC-receiver. The project ultimately was completed in February 1976, approximately four months behind schedule.
On April 4, 1975, FDIC-receiver tendered a proposed agreement to the parties to the letters of credit for the release of F & T Investment’s real estate. This agreement was accepted on July 2, 1975 and FDIC-receiver was directed to execute an assignment of the collateral real estate to Advance Mortgage Corporation.
On February 9, 1976, FDIC-corporation filed a complaint in bankruptcy court against David Cuvrell, as receiver and trustee, F & T Contractors, and F & T Investment, seeking the payment of rentals under the F & T Investment — F & T Contractors lease and the relinquishment of collateral equipment, both of which had secured the promissory note executed by F & T Investment to Northern Ohio Bank. As previously indicated, this note was part of the “unacceptable assets” transferred by FDIC-receiver to FDIC-corporation after Northern Ohio Bank had been declared insolvent. The receiver-trustee answered and filed a counterclaim charging FDIC-corporation with wrongfully terminating the letters of credit and undue delay in returning the collateral that secured these letters. On April 25, 1980, the bankruptcy court granted the counter-plaintiff’s motion to add FDIC-receiver as a counter-defendant, over objections that the court had no jurisdiction over FDIC-receiver.
On March 3,1982, a memorandum opinion was issued by the bankruptcy court, and final judgment was entered on April 1, 1982. As hereinabove stated, the court held that F & T Contractors’ receiver and trustee was liable to FDIC-corporation for use of the leased equipment in question during the pendency of the Chapter XI proceedings and judgment was entered accordingly. With respect to the counterclaim against FDIC-corporation and FDIC-receiver, the bankruptcy court held (1) that it had subject-matter jurisdiction over FDIC-receiver; (2) that F & T Contractors had standing to sue for damages resulting from the termination of the letters of credit and the retention of collateral; (3) that FDIC-corporation impliedly assumed the liabilities with respect to the letters of credit as part of its purchase agreement with FDIC-receiver, and was liable for FDIC-receiver’s breach of contract in wrongfully cancelling such letters; and (4) that FDIC-corporation and FDIC-receiver were liable to the counter-plaintiffs for actual damages incurred rather than only for the face value of the letters of credit. 17 B.R. at 977-994.
In response to a motion by F & T Contractors, the bankruptcy court issued a supplemental memorandum opinion dated Sep *176 tember 20,1982, in which it made additional findings of fact in support of its conclusion that FDIC-corporation assumed the liabilities and obligations of the FDIC-receiver under the letters of credit, as well as the contractual duty to make a timely release of the mortgaged real estate securing these letters.
As hereinabove stated, FDIC-corporation and FDIC-receiver appeal from the bankruptcy court’s decision with respect to the counterclaim. No appeal has been perfected from the judgment of the bankruptcy court on the initial claim brought by FDIC-corporation for delinquent rents.
II.
All the holdings of the bankruptcy court with respect to the counterclaim are challenged by FDIC-corporation and FDIC-receiver on this appeal. As previously indicated we view two issues to be of particular importance: (1) whether the bankruptcy court erred in holding that it had subject matter jurisdiction to hear the counterclaim as against FDIC-receiver; and (2) whether the court erred in holding that the FDIC-corporation impliedly assumed the contingent liabilities represented by the letters of credit when it agreed to purchase the “unacceptable assets” of the Northern Ohio Bank from FDIC-receiver, and therefore was subject to an action in contract when the letters allegedly were terminated wrongfully.
III.
The bankruptcy court’s jurisdiction to hear the counterclaim as against FDIC-receiver is challenged on the grounds that the State court in which the Northern Ohio Bank receivership action was pending (the Court of Common Pleas for Cuyahoga County) has exclusive jurisdiction over claims against the FDIC acting in its capacity as receiver of the Northern Ohio Bank; and also that F & T Contractors’ claim with respect to the letters of credit is not properly within the actual or constructive possession of the bankruptcy court, and therefore is not within its jurisdiction.
Under 12 U.S.C. § 1821(e) (1976) and 12 U.S.C.A. § 1823(c)(2)(A) (West Supp.1983) (formerly contained in part at section 1823(e)),[1] as amended October 15, 1982, the FDIC is authorized to act in dual legal capacities simultaneously: as the receiver of an insolvent bank and also in a separate corporate capacity as an insurer of bank depositors. See Gilman v. Federal Deposit Ins. Corp., 660 F.2d 688, 694 n. 11 (6th Cir.1982); Federal Deposit Ins. Corp. v. Ashley, 585 F.2d 157,160 (6th Cir.1978). As *177 was done in the present case, the FDIC may “act in its corporate capacity to purchase certain assets of a closed bank, even when the FDIC itself acts as the receiver, when another insured bank purchases assets and assumes liabilities of the closed bank” Ashley, supra, 585 F.2d at 161; see also In Matter of Marine Distributors, Inc., 522 F.2d 791, 795 (9th Cir.1975) (involving a similar three-party transaction). The dual capacities of the FDIC must be recognized for purposes of determining jurisdiction. The fact that the bankruptcy court may have jurisdiction over the counterclaim as against FDIC-corporation does not mean that it has jurisdiction with respect to FDIC-receiver.
In dealing with the jurisdictional issue concerning FDIC-receiver, we look first to 12 U.S.C. § 1819, which provides in pertinent part as follows:
§ 1819. Incorporation; powers; seal Upon June 16, 1933, the Corporation shall become a body corporate and as such shall have power—
Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States. (Emphasis added).
Based on the language in this statute, it has been held that federal courts do not have jurisdiction in suits brought by or against the FDIC acting in its capacity as receiver of a state bank, and which involve only the rights or obligations of the state bank, its depositors, etc., under state law. Federal Deposit Ins. Corp. v. Sumner Fin. Corp., 602 F.2d 670, 679-80 (5th Cir.1979); see also Federal Deposit Ins. Corp. v. de Jesus Velez, 678 F.2d 371, 374 (1st Cir.1982); Federal Deposit Ins. Corp. v. Ashley, supra 585 F.2d at 159, 163-64 (6th Cir.1978); Freeling v. Sebring, 296 F.2d 244, 245-46 (10th Cir.1961). In Federal Deposit Ins. Corp. v. Sumner Fin. Corp., supra, 602 F.2d at 677, the Fifth Circuit held that Section 1819 should be “read as setting out a complete scheme for federal jurisdiction over cases in which FDIC is a party,” and that the limitation on federal jurisdiction when the FDIC is acting as the receiver of a state bank “cannot be evaded by predicating jurisdiction on some general jurisdictional grant.”
We hold that the counterclaim asserted against FDIC-receiver in the present case falls within the jurisdictional limitations contained in section 1819. Jurisdiction over such a claim by the bankruptcy court would be precluded absolutely even if that court were to have an otherwise sufficient basis for subject-matter jurisdiction (i.e., possession of the assets which form the basis of the counterclaim). This conclusion is supported by Ohio state law, which is the law governing the receivership proceedings in the Northern Ohio Bank insolvency. In Laub v. Wills, 72 Ohio App. 496, 53 N.E.2d 530 (Ohio App.1943), the Ohio Court of Appeals held that the State court where a receivership action is brought has “plenary and exclusive jurisdiction” over claims concerning the receiver. See also Ohio Rev. Code Ann. § 1113.04(C) (Page 1982 Supp.). The Court of Common Pleas for Cuyahoga County, Ohio has expressly stated in its order approving the FDIC’s three-party transaction that the proceedings are to remain open “for such other relief as may be equitable and as the Receiver may from *178 time to time seek.” In the Matter of Litigation of Northern Ohio Bank, Docket No. 75-939317 (Ct. of Common Pleas for Cuyahoga County, Ohio, February 17, 1975).
We further conclude that, irrespective of the fact that the FDIC-receiver is a party to the counterclaim, the bankruptcy court has no sufficient, independent ground upon which to base the jurisdiction of that court.
The bankruptcy court held that federal jurisdiction was appropriate because it had “possession” of the “chose in action being asserted by the receiver and liquidating trustee of the bankrupt corporation [David Cuvrell]” against FDIC-receiver. 17 B.R. at 981. The right to possession of all property “owned or possessed by the bankrupt rests in the bankruptcy trustee as of the date of the filing of the petition in bankruptcy.” Isaacs v. Hobbs Tire & Lumber Co., 282 U.S. 734, 737, 51 S.Ct. 270, 271, 75 L.Ed. 645 (1931). Under what is described as the bankruptcy court’s summary jurisdiction,[2] it has exclusive jurisdiction to determine and liquidate all claims dealing with property that is within the actual or constructive possession of the trustee or receiver in bankruptcy. See Id.; Harrison v. Chamberlain, 271 U.S. 191, 193, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926). This grant of jurisdiction comes from section 2(a)(7) of the Bankruptcy Act of 1898, 11 U.S.C. § 11(a)(7), which provides as follows:
§ 11. Creation of courts of bankruptcy and their jurisdiction (a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction as law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to— (7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided, and determine and liquidate all inchoate or vested interests of the bankrupt’s spouse in the property in any estate whenever, under the applicable laws of the State, creditors are empowered to compel such spouse to accept a money satisfaction for such interest; and where in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;
The issue under this jurisdictional standard is whether the chose in action of the trustee-receiver of the bankrupt arising out of the letters of credit was property within the active or constructive possession of the bankruptcy court. In In re F & T Contractors, Inc., 649 F.2d 1229 (6th Cir.1981) (involving litigation between Mr. Cuvrell, trustee-receiver, and Old Orchard arising out of F & T Contractor’s bankruptcy), this court held that a bankruptcy court has possession, and therefore jurisdiction
over contract claims or choses in action when the affirmative defenses to the claims of the trustee are “so unsubstantial and obviously insufficient, either in law or fact, as to be plainly without color or merit in the mere pretense.”
Id. at 1234, quoting Willyerd v. Buildex Co., 463 F.2d 996, 999 (6th Cir.1972), quoting In Be Cadillac Brewing Co., 102 F.2d 369, 370 (6th Cir.1939).
In the present ease, however, it is clear that the letters of credit themselves and the collateral securing them, which *179 formed the basis of the counterclaim, were never within the actual or constructive possession of F & T Contractors’ estate, and therefore never within the bankruptcy court’s jurisdiction. The letters of credit always were in the possession of Advance Mortgage Company. As previously indicated, they were issued to Old Orchard by the Bay Associates, not F & T Contractors, for the benefit of Advance Mortgage Corporation. Upon their release and cancellation the letters came within the possession of FDIC-receiver. Furthermore, the collateral backing the letters of credit was either in the possession of FDIC-receiver, which held the mortgages on the real estate used to secure the letters, or F & T Investment, which had actual possession of the real estate itself. As most, F & T Contractors had nothing more than a chose in action with respect to the letters.
The bankruptcy court in the present case concluded that the FDIC-receiver did not raise any defenses which disputed liability on the counterclaim, but merely questioned the amount of damages to be awarded. The court stated as follows:
The first reason is based on the undisputed facts that the FDIC-receiver terminated the letters of credit and that a proper demand was made for the release of the real estate which served as the security for the issuance of the letters of credit immediately upon their termination by the FDIC-receiver (’81 Ex. 18). The FDIC-receiver does not deny that it continued to hold the real estate, and thereby prevent the receiver in bankruptcy to use it as collateral to raise desperately needed money to finish the construction project, but argues that it offered to release that real estate upon the condition of obtaining a complete release for the termination of the letters of credit. (See ’81 Ex. 19.) Therefore, none of the facts necessary to establish the existence of the breach of contract are either materially or substantially disputed by the FDIC-receiver. Furthermore, the documentary evidence and testimony presented by the FDIC at trial indicates that the defense raised by the FDIC to the counter-claim centered upon the question of damages caused by the breach of contract.
17 B.R. at 982.
The admission by FDIC-receiver that it terminated the letters and continued to hold the collateral real estate for a period of time cannot be equated with an admission of liability on the counterclaim for the wrongful termination of such letters. We hold, contrary to the bankruptcy court’s conclusion, that FDIC-receiver did raise a “substantial meritorious” defense to its liability on the letters of credit. It defended on grounds that no contract relationship existed between F & T Contractors and the Northern Ohio Bank from which contractual liability for terminating the letters could be based and that the only connection F & T Contractors had to the letters of credit was that it had acted as a cosigner on the mortgage notes that secured them. We therefore conclude that jurisdiction in the bankruptcy court cannot be based on possession of F & T Contractors’ chose in action on the letters of credit. See In Matter of Marine Distributors, Inc., supra, 522 F.2d 791, 795 (9th Cir.1975) (holding in a similar factual situation that the bankruptcy court had no jurisdiction because it had no actual or constructive possession of the letters of credit involved).
As an alternative basis for asserting jurisdiction, the bankruptcy court indicated that pursuant to Rule 915 of the Rules of Bankruptcy Procedure the FDIC-receiver had waived any right to make a jurisdictional challenge by failing to make a timely objection on this ground. The court reasoned:
Another method by which the bankruptcy court can obtain jurisdiction is by waiver of the jurisdictional defect pursuant to Rule 915 of the Rules of Bankruptcy Procedure. It must be kept in mind that it was the FDIC itself who initiated the present lawsuit when it filed a complaint to liquidate its claim under the promissory note which was secured by the equipment and machinery. The fact that this lawsuit proceeded without any issue *180 concerning this Court’s jurisdiction for more than two years has been held by various courts to confer jurisdiction.
17 B.R. 980 (citations omitted).
Rule 915 provides as follows:
(a) Waiver of Objection to Jurisdiction. Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.
The bankruptcy court’s reasoning on this point must be rejected because it fails to take into consideration the legal separateness of FDIC-corporation and FDIC-receiver. It is true that the present action was initiated by the FDIC in 1976, but this was done in FDIC’s capacity as a corporation. FDIC-receiver was not brought into the lawsuit until April 25, 1980, on the motion of Mr. Cuvrell. FDIC always has challenged the bankruptcy court’s jurisdiction over it in its capacity as receiver. In its answer to Cuvrell’s amended counterclaim, which added FDIC-receiver as a counter-defendant, FDIC-receiver affirmatively alleged that the court had no jurisdiction to hear the counterclaim against it. In addition, we note that jurisdiction is a matter that may be raised at any time and on the court’s own motion. Beck v. Miriani, 293 F.2d 333, 335 (6th Cir. 1961); see aiso First State Bank and Trust Company of Guthrie, Oklahoma v. Sand Springs State Bank, 528 F.2d 350, 353 (10th Cir.1976).
Finally, the bankruptcy court concluded that its jurisdiction was properly founded upon the “procedural necessities of compulsory counterclaims and necessary parties to a lawsuit.” 17 B.R. at 982. We disagree. The counterclaim did not “arise out of the transaction or occurrence that [was] the subject matter of ... [FDIC-corporation’s] claim”. Advisory Committee Note to Fed.R.Bankr.Pro. 713.
The subject matter of the initial claim brought by FDIC-corporation was the security interest leases, which FDIC-corporation was seeking to enforce against the receiver and trustee of F & T Contractors. In an April 10, 1980 memorandum opinion issued in response to FDIC-corporation’s motion for summary judgment on jurisdictional grounds, the bankruptcy court concluded that “[t]he subject matter of the bankrupt’s [F & T Contractors] counterclaim arises out of these same security interest leases and goes to the very heart of their validity and enforceability.” In re F & T Contractors, memorandum opinion (April 10, 1980) (reproduced as an appendix to the court’s final and published opinion, 17 B.R. at 998) (the conclusion referred to being incorporated by reference into the court’s final opinion, see 17 B.R. at 982). To the contrary, the subject matter of the counterclaim was the letters of credit, which involved a totally unrelated transaction.
IV.
We further hold that FDIC-corporation is not liable on the counterclaim brought by the receiver and trustee of F & T Contractors because it did not assume any liabilities with respect to the letters of credit when it agreed to purchase the “unacceptable assets” of Northern Ohio Bank from FDIC-receiver, and therefore is not susceptible to a contract action against it for the wrongful termination of such letters. This holding is supported by the Seventh Circuit’s determination in Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co., 592 F.2d 364, 368 (7th Cir.1979), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979), that FDIC-corporation did not assume any of the Northern Ohio Bank’s liabilities in its purchase agreement with FDIC-receiver.
The Citizens Bank & Trust Co. case dealt with litigation between the FDIC-corporation and the Citizens Bank & Trust Co. of Illinois arising out of the insolvency of the Northern Ohio Bank. FDIC-corporation brought suit in district court against Citizens Bank for the balance of a correspondent account that had been maintained by *181 the Northern Ohio Bank with Citizens Bank. This account was among the “unacceptable assets” transferred by FDIC-receiver to FDIC-corporation after the Northern Ohio Bank was declared insolvent. Citizens Bank counterclaimed, alleging that the Northern Ohio Bank had committed fraud, negligence or breach of contract in obtaining its participation in a certain loan prior to the insolvency of the Northern Ohio Bank, and that “the FDIC as successor in interest to NOB ... is subject to Citizens right of set off and answerable for the remainder of the loss to Citizens.” 592 F.2d at 368. In holding that Citizens Bank’s counterclaim against FDIC-corporation was not maintainable as a contract action, but rather only as a tort action, the Seventh Circuit stated as follows:
Citizens does not suggest any theory or cite any authority for its assertion that FDIC in its corporate capacity is “successor in interest to NOB” and that because FDIC in that capacity acquired certain of NOB’s assets it is liable on Citizens claim against NOB. FDIC in its corporate capacity accepted an assignment of the assets of the receivership that were not assigned to City [National City Bank] National Bank, including the claim against Citizens and the claim against Gananda. FDIC is merely an assignee of those claims. It assumed no liabilities of the receivership and entered into no contract with Citizens. There is accordingly no basis for Citizens’ assertion that its counterclaim against FDIC is a contract claim.
592 F.2d at 368 (emphasis added).
The bankruptcy court in the present case came to a contrary conclusion on this issue, based on the following reasoning:
By accepting the assets offered by the FDIC-receiver, the FDIC in its corporate capacity was fully aware that any attempt it may make on collecting the contract cause of action it had against the bankrupt corporation may be subject to a counterclaim for damages caused by the FDIC-receiver. Its insistence on the execution of a complete release as a condition precedent to the return of the collateral is eloquent proof of the FDIC’s knowledge of the true facts. Since the parties to that contract, namely the FDIC-receiver, and the FDIC in its corporate capacity, did not specifically exclude an assumption of liabilities, this Court concludes that there was a corresponding, although implied, assumption of the liabilities as well.
17 B.R. at 988.
Additional factual findings in support of this holding are contained in the court’s September 20,1982 supplemental memorandum opinion.
We agree with the Seventh Circuit’s conclusion for several reasons. First, the contract between FDIC-receiver and FDIC-corporation is silent as to any assumption of liabilities by the later. Second, a complete reading of the depositions of William S. Bryant and Larry L. Ross, the FDIC officials who handled the Northern Ohio Bank’s insolvency, indicates further that no liabilities with respect to the letters of credit were transferred to FDIC-corporation.
Third, since Northern Ohio Bank’s obligations under the letters of credit were not reflected in the bank’s “book liabilities”, they would not have been anticipated by FDIC-corporation as having been purchased or assumed as part of the agreement with FDIC-receiver. The Northern Ohio Bank properly treated its obligation under each letter as a contingent liability and the collateral mortgages supporting them as contingent assets. See National Surety Corporation v. Midland Bank, 551 F.2d 21, 25 (3rd Cir.1977); Sisalcords Do Brazil, Ltd. v. Fiacao Brasileira De Sisal, S.A., 450 F.2d 419, 422-23 (5th Cir.1971). As such, they were not listed on the bank’s balance sheet. The Official Comment to Ohio Rev.Code Ann. § 1305.16 (U.C.C. § 5-117) contains this explanation:
A bank which issues a letter of credit acts as a principal, not as agent for its customer, and engages its own credit. But the resulting liability is not like that to its depositors, and the security and indemnity furnished by the customer *182 against it and the documents which it receives on honor of complying drafts are not like its own investments.
The typical letter of credit transaction facilitates the movement of goods. The bank’s credit is engaged, but it expects to be put in funds by its customer before it makes disbursements, or to be reimbursed immediately afterwards. And everybody understands that the documents received upon honor of complying drafts are to be turned over to the customer at once when he makes reimbursement or signs trust receipts. Only the bank’s commission, if the transaction is completed, will enter the bank’s general assets and join the other backing of its deposit liabilities.
We hold that the FDIC-corporation is entitled to rely on the bank’s records with respect to assets and liabilities when it enters into ah agreement to purchase assets from such bank. See Federal Deposit Ins. Corp. v. Vogel, 437 F.Supp. 660, 663 (KD.Wis. 1977).
The record indicates to our satisfaction that the FDIC-receiver kept both the contingent assets and liabilities arising out of these letters of credit, and in accordance with Ohio Rev.Code Ann. § 1305.16,[3] can-celled the letters and eventually returned the collateral to the parties involved.
We conclude that FDIC-corporation is not liable on the contract action concerning the letters of credit. FDIC-receiver was the proper party to sue with respect to the letters, but jurisdiction over such a claim lay not with the bankruptcy court, but with the Court of Common Pleas of Cuyahoga County, Ohio.
The decision of the bankruptcy court is reversed. No costs are taxed. The parties will bear their own costs on this appeal.

. 12 U.S.C. Section 1821(e) provides:
(e) Whenever any insured State bank (except a District bank) or any insured branch (other than a Federal branch) of a foreign bank shall have been closed by action of its board of directors or by the authority having supervision of such bank, as the case may be, on account of inability to meet the demands of its depositors, the Corporation shall accept appointment as receiver thereof, if such appointment is tendered by the authority having supervision of such bank and is authorized or permitted by State law. With respect to any such insured State bank or insured branch of a foreign bank, the Corporation as such receiver shall possess all the rights, powers and privileges granted by State law to a receiver of a State bank.
12 U.S.C.A. Section 1823(c)(2)(A), as amended, provides:
(2)(A) In order to facilitate a merger or consolidation of an insured bank described in subparagraph (B) with an insured institution or the sale of assets of such insured bank and the assumption of such insured bank’s liabilities by an insured institution, or the acquisition of the stock of such insured bank, the Corporation is authorized, in its sole discretion and upon such terms and conditions as the Board of Directors may prescribe—
(i) to purchase any such assets or assume any such liabilities;
(ii) to make loans or contributions to, or deposits in, or purchase the securities of, such insured institution or the company which controls or will acquire control of such insured institution;
(iii) to guarantee such insured institution or the company which controls or will acquire control of such insured institution against loss by reason of such insured institution’s merging or consolidating with or assuming the liabilities and purchasing the assets of such insured bank or by reason of such company acquiring control of such insured bank; or
(iv) to take any combination of the actions referred to in subparagraphs (i) through (iii).

. As previously indicated, this case arose prior to the Bankruptcy Reform Act of 1978 which, along with its accompanying jurisdictional statute, 28 U.S.C. § 1471, eliminated the necessity for distinguishing between plenary and summary jurisdiction in bankruptcy court litigation.

. The Official Comment to this section provides as follows:
It is therefore proper, when insolvency occurs before the letter of credit transaction is completed, to regard both the outstanding liabilities, the security held and funds provided to indemnify against those liabilities, and
the related drafts and documents, as separate from deposit liabilities and from general assets, and to deal with them as separate. To do so carries out the original purpose, which is to facilitate the underlying mercantile transaction, and does no wrong to the bank’s depositors and other general creditors.