**ARBITRAJE CASA DE CAMBIO, S.A. DE C.V., et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**No. CIV.A.02–0777(RMC).**

United States District Court, District of Columbia.

Dec. 31, 2003.

Richard H. Middleton, Jr., Robert C. Gill, II, Slavit & Gill, P.C., Washington, DC, for Plaintiff.

Peter David Blumberg, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Many families in Mexico are dependent upon monies sent to them by family members working in the United States. Sophisticated banking arrangements are not available in smaller villages in Mexico. Family members in the United States, therefore, purchase money orders from the United States Postal Service ("USPS" or "Postal Service") and send them home, where they are signed by the recipient and treated almost as cash in U.S. dollars. This lawsuit is brought by ten Mexican foreign currency exchange houses (the "Exchange Houses")[1] who challenge the

1. Plaintiffs are Arbitraje Casa de Cambio, S.A. de C.V.; Asesoria Cambiaria, Casa de Cambio, S.A. de C.V.; C.B.I. Casa de Cambio, S.A. de C.V.; Casa de Cambio Dinex, S.A. de C.V.; Casa de Cambio Puebla, S.A. de C.V.; Casa de Cambio Tiber, S.A. de C.V.; Intercam Casa de Cambio, S.A. de C.V.; S.C. Divisas Casa de Cambio, S.A. de C.V.; Casa de Cambio Mo-

actions of the USPS in reclaiming nearly $9 million due to the acceptance in Mexico of Postal Service money orders that the Postal Service asserts were later found to contain forged endorsements. The question is whether the Complaint states a claim on which relief can be granted and, if so, whether this Court has jurisdiction to hear the case.

## Background Facts

The circumstances that led to this litigation existed in 1996–97, when an economic crisis affecting the Mexican economy apparently prompted a large-scale fraud in Postal Service money orders. During that time period, the Exchange Houses purchased the money orders from payees residing in Mexico, who allegedly endorsed the money orders over to the Exchange Houses. The Exchange Houses then deposited the money orders in various "presenting" banks in the United States with whom the Exchange Houses had deposit accounts. The presenting banks, in turn, presented the money orders to a Federal Reserve Bank for credit and credited the Exchange Houses' deposit accounts for the value of the money orders. The Federal Reserve Banks, in turn, drew against the Postal Service's account at the United States Treasury for the value of the money orders presented and credited the presenting banks with that amount.

Subsequently, the Postal Service reclaimed a large number of these deposited money orders after it determined that the endorsements on the money orders were forged. Accordingly, USPS demanded a refund from the presenting banks; the presenting banks repaid the Postal Service; and the presenting banks debited the Exchange Houses' accounts for the value of the reclaimed money orders. The Exchange Houses who are plaintiffs here allege that, in all, the presenting banks debited their deposit accounts in the amount of $8,923,339.69 for the reclaimed money orders in question.

The Postmaster General has the right to make such reclamations if, after payment, a money order is found to be stolen, or to have a forged or unauthorized endorsement, or to contain any material defect or alteration. USPS Domestic Mail Manual § 3.4 ("DMM").[2] When the payee or beneficiary of a money order notifies the purchaser that he or she never received the money order, or that the endorsement was altered or forged, then the purchaser can contact USPS and demand a refund. *See* DMM § 2.9. The purchaser of the money order can initiate the refund process by requesting a "6401 review." *Id.* at § 2.9. Once the 6401 review is complete, the purchaser and the payee fill out a form 306, which provides for the refund of the money order. The form 306 serves as an affidavit by the purchaser of the money order, attesting to the theft or forgery.

Once they became aware of the extraordinary number of reclamation actions, which affected so many Exchange Houses, the plaintiffs assert that they refused to accept further Postal Service money orders. A series of meetings between repre-

---

nex, S.A. de C.V.; and Casa de Cambio Tamibe, S.A. de C.V.

**2.** Under DMM § S020.32, the Postmaster General:

has the usual right of a drawee to examine money orders presented for payment by banks through the Federal Reserve System and to refuse payment of money orders, and *has a reasonable time after presentation*

*to make such examination.* Provisional credit is given to the Federal Reserve Bank when it furnishes the money orders for payment to the postmaster general. Money orders are deemed to be paid only after examination is completed, subject to the postmaster general's right to make reclamation .... (Emphasis added.)

sentatives of the parties ensued, including in attendance Jayne E. Schwarz, Manager, Accounting, USPS, who is responsible for the financial policies dealing with domestic and international money order programs.[3] At these meetings, the Exchange Houses presented a list of 48 "anomalies" to show that USPS was accepting large numbers of fraudulent refund claims. Through affidavits presented here, the Exchange Houses allege that Ms. Schwarz and USPS agreed that at least 17 of the anomalies were valid and that USPS would refund the reclaimed monies associated with those errors. By letter dated January 14, 1998, Ms. Schwarz thanked the Exchange Houses "for joining us in the Washington DC [sic] area to outline issues needed to enable cashing of U.S. Postal International Money Orders in Mexico." Opp., Exh. 18. Ms. Schwarz expressed the Postal Service's "intent . . . to work on" a list of issues and "to establish an agreed upon process" for handling money orders. *Id.* Among other things, she agreed that USPS would "review all claims that [the Exchange Houses] have returned in order to determine their validity for reimbursement" and, in exchange, asked for "your determination that U.S. International Postal Money Orders will be cashed shortly." *Id.* Ms. Schwarz later referred to this agreement as a "pilot project" when USPS ceased working with the Exchange Houses to address large-scale money-order fraud in September 1999. Opp., Exh. 21. Earlier, however, USPS in a form letter to "Dear Postal Customer," dated November 7, 1998, had stated that "The U.S. Postal Service has an agreement with the Mexican Casas. They return to us any affidavit of forgery denied before we bill the presenting bank." Opp., Exh. 20. It is clear that no refund monies were ever paid, which prompted this suit.

---

**3.** The Complaint contains no mention of these meetings or the agreements reached as a result of them. Rather, this information is

## Standard of Review

The Postal Service defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (b)(3) and (b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 472 (D.C.Cir.1991). In reviewing such a motion, the Court takes the allegations in the non-movant's pleading as true. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

When faced with a facial challenge to subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), the Court applies substantially the same standard of review that is used to evaluate FED. R. CIV. P. 12(b)(6) motions. *See Vanover v. Hantman,* 77 F.Supp.2d 91, 98 (D.D.C.1999). The court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff; however, the court does not need to accept as true the plaintiff's legal conclusions. *See Alexis v. District of Columbia,* 44 F.Supp.2d 331, 336–37 (D.D.C.1999).

### A. Is the complaint barred by the FTCA?

The Postal Service argues that the complaint alleges "Breach of Contract" and "Estoppel and Laches" but that the gravamen of the allegations lies in tort and must be dismissed because the plaintiffs did not comply with the Federal Tort

gleaned from the Opposition to the Motion to Dismiss and its accompanying exhibits and the oral argument held before the Court.

Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"). *See Aktiebolaget Bofors v. United States,* 194 F.2d 145, 148 (D.C.Cir. 1951) (The "label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states."). Further, the Postal Service argues that the plaintiffs have not sued the proper party defendant, have failed to exhaust administrative remedies, are barred by the statute of limitations, are barred by the FTCA's discretionary function exception, and fail to allege the breach of a duty cognizable under the FTCA.

 Count I of the complaint is clearly labeled "breach of contract." It first claims that the postal money orders issued by the USPS "represented express and/or implied contracts obligating the USPS to honor and pay such debt obligations." Compl. ¶ 33. However, as the Postal Service correctly argues, postal money orders are commercial paper, like checks from the U.S. Treasury, that are issued by the government as a public convenience. *See Bolognesi v. United States,* 189 F. 335, 336–37 (2d Cir.1911). Transactions and disputes concerning postal money orders are determined by principles of federal commercial law, as modified by federal regulations, and not by contract principles or state laws. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (applying principles of federal commercial law); *Casa De Cambio Comdiv S.A. De C.V. v. United States,* 291 F.3d 1356, 1359 (Fed.Cir.2002). In addition, it is clear that the Exchange Houses, as opposed to the presenting banks, have no claim against the government in any action based on postal money orders. *See Casa De Cambio Comdiv,* 291 F.3d at 1360 ("The depositer [Exchange House], unlike the presenting bank, has no claim against the United States."). The reason the Exchange Houses cannot sue the United

States directly is that the actions of the presenting banks in docking their accounts "may not fairly be attributed to" the government. *Dockstader v. Miller,* 719 F.2d 327, 332 (10th Cir.1983). Should the Exchange Houses sue anyone on the postal money orders, it should be the presenting banks, under state law. *Id.*

Secondly, the complaint alleges a breach of contract in that Section 391.8 of the International Mail Manual ("IMM") specifies that an international money order "will not be refunded to the purchaser unless the country of payment has, as a result of an inquiry, given notice that the money has not been paid and will not be paid." *See* Compl. ¶¶ 34, 35. The Postal Service discounts this allegation, explaining that IMM § 391.8 applies to "list service" money orders and not "direct service" money orders that are at issue here. *See* Motion to Dismiss at 18 n. 9. For the reasons argued by the Postal Service in its Motion and Reply, which are not countered by the plaintiffs, the Court finds that Section 391.8 of the IMM does not apply to the money orders at issue here.

The final set of allegations in the complaint under plaintiffs' breach of contract theory has two parts. First, it notes that the DMM requires USPS to conduct an examination of a paid money order within "a reasonable time" after USPS discovers that it was forged or otherwise defective. The complaint alleges that the Postal Service's examination of the money orders in question was unreasonably delayed and therefore violative of its own regulations. *See* Compl. ¶¶ 37, 38. In addition, the complaint attacks the "cursory and incompetent nature of the USPS procedure for the processing of refund claims," which is allegedly in violation of the Postal Service's obligation to take "such measures as are reasonably necessary to determine whether a refund claim is valid." *Id.* ¶ 39.

In short, the plaintiffs believe that "USPS was subjected to a massive deception by fraudulent refund claimants." *Id.* ¶ 39. In making this argument, plaintiffs contend they "do not make a claim under the FTCA." Opp. at 14.

■ These allegations fail to state a claim for breach of contract. As currently framed by the Complaint, these claims arise solely from the Postal Service's purported violations of its own regulations found in the DMM. Such allegations sound in tort, rather than in contract, and are therefore subject to the requirements of the FTCA.. *See J.C. Driskill, Inc. v. Abdnor,* 901 F.2d 383, 386 (4th Cir.1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action.") citing *FDIC. v. Citizens Bank & Trust Co.,* 592 F.2d 364, 369 (7th Cir.1979); 28 U.S.C. § 2679(b)(1). Plaintiffs' claims must be dismissed pursuant to the FTCA because they did not properly present the claims to the Postal Service within the statute of limitations. *See* 28 U.S.C. § 2675(a). Presentation of a claim "is a mandatory jurisdictional prerequisite to suit against the United States, and this failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction to hear these claims." *Jackson v. United States,* 730 F.2d 808, 809 (D.C.Cir.1984). Plaintiffs effectively concede as much, as they argue that their claims are not brought under the FTCA. *See* Opp. at 14.

■ In their Opposition to the Postal Service's Motion to Dismiss and voluminous exhibits attached thereto, the Exchange Houses chronicle a series of meetings with the Postal Service that took place in 1997 and 1998. The Exchange Houses allege that as a result of these meetings "Plaintiffs [ ] entered into express contracts with the USPS," whereby the Exchange Houses would continue to accept Postal Service money orders and the Postal Service would reimburse the Exchange Houses for certain reclamations. Opp. at 33. They further assert that violation of these alleged "express contracts" falls outside the scope of the FTCA. These supplemental allegations are not properly before the Court. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Coleman v. Pension Benefit Guar. Corp.,* 94 F.Supp.2d 18, 24 n. 8 (D.D.C.2000) quoting *Morgan Distrib. Co., Inc., v. Unidynamic Corp.,* 868 F.2d 992, 995 (8th Cir. 1989). Because there is no hint of these meetings and alleged express contracts in the Amended Complaint, the Court therefore cannot consider these allegations in deciding the instant motion to dismiss.

The second count of the Complaint, for Estoppel and Laches, suffers from similar infirmities. These allegations also stem in part from the Postal Service's alleged unreasonable delay in making reclamations. See Compl. ¶ 41. As discussed above, such allegations sound in tort, are subject to the strictures of the FTCA, and must be dismissed for failure to exhaust administrative remedies. Likewise, allegations regarding the Postal Service's breach of its duty to warn promptly the Exchange Houses about the large number of reclamations also sounds in tort, and must be dismissed for the same reasons.

At the oral argument on this motion, the Court granted Plaintiffs leave to file a Second Amended Complaint to include the aforementioned allegations regarding "express contracts." Despite being given this opportunity, Plaintiffs have failed to file an Amended Complaint. The Court therefore will grant the motion to dismiss. Should Plaintiffs still desire to file an Amended Complaint, they must now seek leave of Court under FED. R. CIV. P. 15(a) and concurrently file a motion under FED. R.

Civ. P. 59(e) to alter or amend judgment. *See Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 299 (D.C.Cir.1993).[4] A separate Order accompanies this Memorandum Opinion.

4. The Court does not reach the alternative arguments raised in the Motion to Dismiss that Plaintiffs' claims are covered by the Contract Disputes Act ("CDA"), with jurisdiction in the Court of Federal Claims, *see* 28 U.S.C. § 1346(a)(2), or, if jurisdiction properly resides in the federal district courts, whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is warranted. If a Second Amended Complaint is filed, Defendants may renew these arguments.