NUMBER 13-01-636-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


BANK OF AMERICA, N.A., F/K/A

NATIONSBANC, N.A., Appellant,


v.
 


FIRST NATIONAL BANK AND 

BANCINSURE, INC., Appellees.

 


On appeal from the 332nd District Court 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Benavides, and Wittig (1)


Memorandum Opinion by Justice Wittig



 This is a summary judgment case. The case arises out of a suit by First National
Bank to recover damages for the wrongful debiting of its account by Bank of America,
N.A. ("Bank of America"), formerly NationsBanc, N.A. Bank of America filed a
counterclaim, alleging that First National Bank was indebted for additional returned
postal money orders. BancInsure, Inc. ("BancInsure") intervened to recover certain
funds previously paid to First National Bank. The trial court granted plaintiff/appellee
First National Bank's motion summary judgment in its favor and in favor of
intervenor/appellee BancInsure. (2)
 Bank of America appeals the trial court's granting of
First National Bank's motion for summary judgment and denial of its own motion for
summary judgment. We reverse and remand.

I. Background


 First National Bank and Bank of America are both banking institutions. In 1994,
First National Bank opened a regular deposit account with Bank of America. First
National Bank officers Saul Ortega, Robert Gandy, and D. M. Penoli executed the
signature card on the account. The signature card incorporated Bank of America's
written deposit agreement, setting forth the rights and duties of Bank of America and
the customer. The signature card provided:

 The depositor(s) whose signature(s) appears below and any P.O.D. payee
or Totten Trust beneficiary whose signature(s) appears on the back
certify that the information on this form is true, correct and complete and
agree to be governed by the deposit agreement related to the type of
account associated with this card as such agreement may be amended
from time to time.


 On or about August 5, 1997, ASASC S.A. de C.V. ("ASASC") opened a
business checking account at First National Bank. ASASC is a casa de cambio located
in Mexico. (3) ASASC deposited United States Postal Service ("USPS") money orders
into the account. (4) First National Bank then deposited the items into its account with
Bank of America. Bank of America would present the postal money orders to the
Federal Reserve Bank and would credit the account of First National Bank after
collection. First National Bank then credited the account of ASASC. 

 In approximately June 1998, Bank of America began receiving reclamation
claims from the USPS alleging that some of the postal money orders deposited by
ASASC were forged or altered. (5) Bank of America forwarded the claims to First
National Bank. First National Bank initially credited the USPS for the claimed money
orders and charged ASASC's account. First National Bank later claimed that it had
properly complied with its duties and was not responsible for payment of any further
ASASC postal money orders the USPS attempted to reclaim through Bank of America. 

 USPS issued reclamation claims for $644,177.00 in postal money orders
deposited by ASASC to Bank of America, alleging that the money orders were forged
or altered. Bank of America asserts it gave oral notice of the reclamation claims to
First National Bank on March 3, 1999, although it also contends that First National
Bank had previously refused to pay these particular claims. On March 3, 1999, Bank
of America charged First National Bank's account $677,177.00 for the returned
money orders. Bank of America provided written notice on March 5, 1999. 

 First National Bank later withdrew all remaining funds and closed its account at
Bank of America. The USPS served subsequent new reclamation notices in the
amount of $336,824.00 to Bank of America for additional postal money orders
deposited by ASASC, which Bank of America repaid. These new additional charges
were the subject of Bank of America's counter-claim. Bank of America contends it
gave First National Bank time to investigate or deal with USPS. First National Bank
denies this.

 First National Bank filed suit against Bank of America seeking to recover
$644,177.00 it claimed Bank of America wrongfully debited from its account. It
alleged violations of article 4 of the Uniform Commercial Code ("UCC"), (6) violations of
Regulation CC, (7) and various tort claims. Bank of America filed affirmative defenses
and counterclaimed to recover amounts it contended First National Bank must
reimburse. Bank of America's counterclaim alleged breach of warranty, breach of
deposit agreement, and recoupment for attorneys' fees and expenses. 

 First National Bank also filed suit against its insurance carrier, BancInsure, to
recover the amount charged against its account by Bank of America, plus additional
sums paid directly to the USPS. First National Bank and BancInsure settled the claim. 
BancInsure later filed an intervention in the suit between First National Bank and Bank
of America. 

 First National Bank and Bank of America both filed cross-motions for partial
summary judgment. The grounds for these motions will be discussed in further detail
herein. The trial court granted summary judgment in favor of First National Bank. The
damage issues were tried before the court. Liability was established based upon First
National Bank's partial motion for summary judgement. First National Bank was
awarded damages in the amount of $644,177.00, plus lost interest in the amount of
$182,567.00. BancInsure was awarded its subrogation interest in the amount of
$200,000. Bank of America appeals the judgment and argues that the trial court erred
in granting First National Bank's motion for partial summary judgment and denying
Bank of America's motion for partial summary judgment, inter alia.

II. Jurisdiction


 Bank of America, notwithstanding the fact that it is the appellant in this case
and invoked our jurisdiction, first questions whether this Court has jurisdiction to
review the case. Bank of America argues that the trial court's judgment did not
dispose of Bank of America's counterclaims for recovery and thus may not be an
appealable final judgment. 

 The general rule, with a few mostly statutory exceptions, is that an appeal may
be taken only from a final judgment. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). Judgment is final for purposes of appeal if it disposes of all pending
parties and claims in the record, except as necessary to carry out the decree. Id. 
Because the law does not require that a final judgment be in any particular form,
whether a judicial decree is a final judgment must be determined from its language and
the record in the case. Id. Finality "must be resolved by a determination of the
intention of the court as gathered from the language of the decree and the record as
a whole, aided on occasion by the conduct of the parties." Id. at 203 (quoting 5 Ray
W. McDonald, Texas Civil Practice § 27:4[a], at 7 (John S. Covell, ed., 1992 ed.)).

 Both First National Bank and Bank of America filed motions for partial summary
judgment. First National Bank's motion requested traditional summary judgment on
the claims it alleged. Bank of America's motion sought traditional summary judgment
on the counterclaim breach of warranty. The motion also argued for no-evidence
summary judgment against First National Bank's claims.

 On July 20, 2000, the trial court heard arguments for both First National Bank's
motion for partial summary judgment and Bank of America's cross-motion for partial
summary judgment. On August 15, 2000, the trial court issued an order granting First
National Bank's motion for summary judgment, evidenced by a handwritten note in the
clerk's record. Bank of America moved for a hearing to clarify the order. Bank of
America asserted that no ruling had been made with regard to its cross-motion for
summary judgment. On January 25, 2001, the court responded that its intention was
to grant First National Bank's motion for summary judgment and deny Bank of
America's cross-motion for summary judgment. Following a trial for the determination
of damages, the trial court issued a "Final Judgment" in favor of First National Bank
and BancInsure containing the Mother Hubbard clause, "All relief not specifically
granted herein is denied."

 From our examination of the record as a whole, the trial court purported to and
intended to dispose of all issues in this case with finality. The trial court's order from
the bench during the clarification hearing sought to dispose of Bank of America's
counterclaims as contained within their motion for summary judgment. (8) We hold that
the trial court's judgment was final for purposes of this appeal.

III. Standard of Review


 We review the granting of a traditional motion for summary judgment de novo. 
See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Branton v. Wood,
100 S.W.3d 645, 646 (Tex. App.-Corpus Christi 2003, no pet.); Tex. Commerce
Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus Christi
2000, pet. denied). To sustain an order granting summary judgment, we must
determine that the pleadings and summary judgment evidence establish that no
genuine issue of material fact exists and that the movant is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470,
471 (Tex. 1991). In deciding whether there is a genuine issue of material fact,
evidence favorable to the nonmovant will be taken as true, and all reasonable
inferences made, and all doubts resolved, in his favor. American Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

 In a summary judgment proceeding where the claiming party is the movant, the
claimant must conclusively prove its entitlement to prevail on each element of the
cause of action as a matter of law. MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex.
1986); Brazos Valley Cmty. Action Agency v. Robison, 900 S.W.2d 843, 845 (Tex.
App.-Corpus Christi 1995, no writ) (citing Swilley v. Hughes, 488 S.W.2d 64, 67
(Tex. 1972)). The claimant meets the burden if it produces evidence that is sufficient
to support an instructed verdict at trial. Brazos Valley Cmty. Action Agency, 900
S.W.2d at 845 (citing Brownlee v. Brownlee, 665 S.W.2d 111 (Tex. 1984)).

 Summary judgment for the responding party is proper if the movant disproves
at least one element of each of the claimant's claims or affirmatively establishes each
element of an affirmative defense to each claim. American Tobacco Co., 951 S.W.2d
at 425. A respondent moving for summary judgment on an affirmative defense has
the burden to conclusively establish that defense. Velsicol Chem. Corp. v. Winograd,
956 S.W.2d 529, 530 (Tex. 1997). 

 When a no-evidence motion for summary judgment is presented, the movant
does not bear the burden of establishing each element of its own claim or defense. 
However, Rule 166a(i) requires the movant to specify the essential element or
elements of a claim or defense to which there is no evidence. Tex. R. Civ. P. 166a(i). 
This, in turn, shifts the burden on the nonmovant to come forward with some evidence
of the essential element or elements challenged in the motion. Gen. Mills Rests., Inc.
v. Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.-Dallas 2000, no pet.); Lampasas
v. Spring Center, Inc., 988 S.W.2d 428, 436 (Tex. App.-Houston. [14th Dist.] 1999,
no pet.); see Tex. R. Civ. P. 166a(i). 

 If the nonmovant is unable to proffer enough evidence, the trial court must grant
the motion. Branton, 100 S.W.3d at 647. A no-evidence summary judgment is
improper if the respondent brings forth more than a scintilla of probative evidence to
raise a genuine issue of material fact. Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the
evidence is so weak as to do no more than create a mere surmise or suspicion of a
fact. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983); Branton, 100
S.W.3d at 647. More than a scintilla of evidence exists when the evidence rises to
a level that would enable reasonable and fair-minded people to differ in their
conclusions. Merrell Dow Pharms., Inc., 953 S.W.2d at 711; Branton, 100 S.W.3d at
647.

 When both sides move for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review the summary judgment
evidence presented by both sides and determine all questions presented. Comm'rs Ct.
of Titus Cty. v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Jones v. Strauss, 745 S.W.2d
898, 900 (Tex. 1988). If reversing, the reviewing court should ordinarily render such
judgment as the trial court should have rendered. Comm'rs Ct. of Titus Cty., 940
S.W.2d at 81; Jones, 745 S.W.2d at 900.

IV. Applicable Law


 An issue of primary concern in this case is how USPS money orders should be
treated under applicable state and federal law in actions regarding bank deposits and
collections in Texas.

A. Uniform Commercial Code Article 4

 Generally speaking, actions regarding bank deposits and collections in Texas are
governed by article 4 of the UCC. Tex Bus. & Com. Code Ann. § 4.101 - § 4.504
(Vernon 2002 & Supp. 2006); see Pulaski Bank & Trust Co. v. Tex. Am. Bank/Fort
Worth, N.A., 759 S.W.2d 723, 725 (Tex. App.-Dallas 1988, no writ). Applicable
federal laws and regulations, like the Expedited Funds Availability Act (9) and Regulation
CC, (10) supercede any inconsistent state law. 12 C.F.R. § 229.20 (2004); Tex. Bus. &
Com Code § 4.102 cmt. 1 (Vernon 2002). Furthermore, the statutory rules governing
bank deposits and collections may be varied by agreement. 12 U.S.C. § 4007 (2000);
12 C.F.R. § 229.37 (2004); Tex. Bus. & Com. Code Ann. § 4.103(a) (Vernon 2002).

B. The Expedited Funds Availability Act and Regulation CC

 The Expedited Funds Availability Act imposes specific and detailed provisions
requiring banks to: (1) make funds available to their customers within specified time
frames, (2) pay interest on interest-bearing transaction accounts not later than the day
the bank receives provisional credit, and (3) disclose their funds availability policies to
their customers. 53 Fed. Reg. 19372 (1988); see 12 U.S.C. § 4001 - § 4010 (2000). 
The Federal Reserve Bank has promulgated rules for the Expedited Funds Availability
Act known as Regulation CC. See 12 C.F.R. part 229 (2004). Regulation CC sets out
rules requiring banks and other depository institutions to make funds deposited into
accounts available according to specified time schedules and disclose funds availability
policies to their customers. 53 Fed. Reg. 19372 (1988). It also establishes rules
designed to speed the return of unpaid checks. Id.

 Regulation CC provides us guidance as to how postal money orders should be
treated with regard to deposits and collection in the commercial banking system. 
Regulation CC expressly includes the treatment of USPS money orders under the
definition of "check." 12 C.F.R. § 229.2(k) (2004). The commentary to the rule
explains that USPS money orders are defined as checks because they often are used
by consumers as a substitute for checks, even though money orders are not negotiable
under Postal Service regulations. 12 C.F.R. part 229 appendix E. Postal money orders
are also treated as checks because they are generally drawn on, payable through, or
payable at banks. Id. Under Regulation CC, postal money orders are treated in a
similar manner to checks with regard to fund availability requirements under subpart
B. (11) However, Regulation CC expressly exempts postal money orders from the
expeditious-return, (12) notice-of-nonpayment, (13) and same-day settlement (14) provisions of
subpart C. 12 C.F.R. § 229.42 (2004). 

C. Bank of America Depository Agreement

 The statutory rules governing bank deposits and collections may be varied by
agreement. 12 U.S.C. § 4007 (2000); 12 C.F.R. § 229.37 (2004); Tex. Bus. & Com.
Code Ann. § 4.103(a) (Vernon 2002). A deposit contract between a bank and an
account holder is considered a contract in writing for all purposes and may be
evidenced by one or more agreements, deposit tickets, signature cards, amendments
provided by Texas Finance Code section 34.302, or by other documentation as
provided by law. Tex. Fin. Code Ann. § 34.301 (Vernon 2002). Contrary to Bank of
America's implicit argument, parties to the agreement cannot disclaim a bank's
responsibility for its lack of good faith or failure to exercise ordinary care, or limit the
measure of damages for the lack of good faith or failure to exercise ordinary care. 12
C.F.R. § 229.37 (2004); Tex. Bus. & Com. Code Ann. § 4.103(a) (Vernon 2002).

 A deposit agreement existed between First National Bank and Bank of America. 
Bank of America alerts us to the following provisions of the deposit agreement:

 4. Deposits

 a. Items Deposited. We may refuse, accept for collection only, or return
all or part of any deposit. . . . Credit for an item deposited is provisional
and subject to revocation if the item is not paid for any reason.


 e. Items Returned. If a deposited item is returned by the bank on which
it is drawn, we may accept the return and charge the item back against
your account without regard to whether the other bank returned the item
before its midnight deadline. . . . You waive notice of dishonor and
protest, and agree that we will have no obligation to notify you of any
deposited item that is returned to us. Unless prohibited by applicable law
or regulation, we also reserve the right to charge back to your account
the amount of any item deposited to your account or cashed for you
which was initially paid by the payor bank and which is later returned to
us due to an allegedly forged, unauthorized or missing endorsement,
claim of alteration, encoding error, or other problem which in our
judgment justifies reversal of credit. . . .


 18. Indemnification/Limitation of Liability. . . .You agree to pay our
attorney's fees and costs, in addition to any obligations described above,
in the event that we shall prevail in any legal proceeding arising out of
your account or this agreement.


D. USPS Money Orders

 We also look to the rules for the issuance, cashing, and reclamation of USPS
money orders as set out within the USPS Domestic Mail Manual (herein "DMM") S020
and the USPS International Mail Manual (herein "IMM") S020. See 39 C.F.R. § 111.1
(2003) (incorporating by reference the Domestic Mail Manual of regulations governing
domestic mail services) and 39 C.F.R. § 20.1 (2003) (incorporating by reference the
International Mail Manual of international mail regulations). 

IV. Analysis


A. First National Bank's Motion for Partial Summary Judgment

 Bank of America contends that the trial court erred by granting First National
Bank's motion for partial summary judgment. We agree.

1. Federal Preemption of UCC 4-202

 In its motion for summary judgment, First National Bank argued that Bank of
America failed to abide by its duty of ordinary care to return postal money orders by
its midnight deadline under UCC § 4-202. UCC § 4-202, titled "Responsibility for
Collection or Return; When Action Timely," provides in relevant part : 

 (a) A collecting bank must exercise ordinary care in:

 (1) presenting an item or sending it for presentment;

 (2) sending notice of dishonor or non-payment or returning an item
other than a documentary draft to the bank's transferor after
learning that the item has not been paid or accepted, as the case
may be; 

 (3) settling for an item when the bank receives final settlement;
and

 (4) notifying its transferor of any loss or delay in transit within a
reasonable time after discovery thereof.


 (b) A collecting bank exercises ordinary care under Subsection (a) by
taking proper action before its midnight deadline following receipt of an
item, notice, or settlement. Taking proper action within a reasonably
longer time may constitute the exercise of ordinary care, but the bank
has the burden of establishing timeliness. . . .


Tex. Bus. & Com. Code Ann. § 4.202 (a), (b) (Vernon 2002).

 "Midnight deadline" is the midnight on the next banking day following the
banking day on which a bank received the relevant item or notice from which the time
for taking action commences to run, whichever is later. Id.

 Regulation CC provides, "The provisions of this subpart supersede any
inconsistent provisions of the UCC as adopted in any state, or of any other state law,
but only to the extent of the inconsistency." 12 C.F.R. 229.41 (2004). Deadlines for
notice of dishonor, notice of nonpayment, and the return of a check are specifically set
out by Regulation CC. See id. § 229.30(a), § 229.31(a), § 229.33(a). Regulation CC
also provides that the rules regarding notice of nonpayment and the return of checks
are inapplicable to postal money orders. Id. § 229.42. The provisions of UCC 4-202
are inconsistent with those of Regulation CC, which require exemption of postal
money orders from rules regarding notice of nonpayment and return of checks. We
therefore hold that First National Bank did not establish any liability based upon UCC
4-202 because the applicable provisions of UCC § 4-202 were preempted by
Regulation CC.

2. Exemption of Postal Money Orders

 In its motion for partial summary judgment, First National Bank also argued that
Bank of America violated provisions of Regulation CC requiring that a bank return a
check in an expeditious manner. See id. § 229.31. This provision of Regulation CC
is expressly excluded from application to postal money orders. Id. § 229.42. 
Therefore, we hold that First National Bank did not establish any liability based upon 
§ 229.31 of Regulation CC. See id. § 229.31.

3. Tort Claims

 In its motion for summary judgment, First National Bank also asserted tort
claims emerging out of a duty of "good faith" and "ordinary care."

 Banks have a statutory obligation to use good faith and exercise ordinary care
under UCC § 4-103. Tex. Bus. & Com. Code Ann. § 4.103 cmt. 4 (Vernon 2002). 
Actions approved under either UCC article 4, Federal Reserve regulations, or Federal
Reserve operating circulars constitute ordinary care. Id. § 4.103(c). 

 In its motion for summary judgment, First National Bank asserted a cause of
action in tort for Bank of America's breach of its duty of ordinary care by violating the
requirements of UCC 4-202. We held, supra, that Bank of America was not bound to
the notice and return requirements of UCC 4-202. Therefore Bank of America did not
violate its duty of ordinary care thereunder.

 First National Bank next claimed that Bank of America violated its duty of
ordinary care by debiting First National Bank's account after it received final settlement
and payment of the postal money orders. First National Bank claimed that UCC 4-215(d), which states, "If a collecting bank receives a settlement for an item that is or
becomes final, the bank is accountable to its customer for the amount of the item, and
any provisional credit given for the item in an account with its customer becomes
final," prohibits the unilateral charge-back of an account after final payment of an item. 
See Tex. Bus. & Com. Code Ann. § 4-215(d) (Vernon 2002). It claimed that as the
money orders at issue were finally paid, charge-back of the account constituted a
breach of ordinary care. 

 UCC 4-215(a) addresses when an item is finally paid by a payor bank. Id. § 4-215(a). A "payor bank" is defined as the bank that is drawee of the draft. Id. §
4.105(3). A "drawee" is defined as a person ordered in a draft to make payment. Id.
§ 4.104(a)(8).

 In order to receive payment on a postal money order, a collecting bank presents
the money order to the Federal Reserve Bank and receives a credit. DMM 
S020.3.1(c) (2004). Although the Federal Reserve Bank issues credit for postal
money orders, the Federal Reserve Bank is not the drawee of the item. The Domestic
Mail Manual expressly provides:

 The postmaster general has the usual right of a drawee to examine
money orders presented for payment by banks through the Federal
Reserve System and to refuse payment of money orders, and has a
reasonable time after presentation to make each examination. Provisional
credit is given to the Federal Reserve Bank when it furnishes the money
orders for payment by the postmaster general. Money orders are deemed
paid only after examination is completed, subject to the postmaster
general's right to make reclamation under 3.4.


DMM S020.3.2 (2004). 

 First National Bank's claim under UCC 4-215 was not established as a matter
of law because it did not establish that final payment was made on the postal money
orders after the postmaster examination was completed. The monies credited to Bank
of America by the Federal Reserve Bank may have been provisional. See id. The
USPS was the payor bank, entitled to examine the money orders prior to final
payment. See id. In this case, there was no evidence the USPS, as the payor,
deemed any money paid. There also remains a fact question, whether or not a
"reasonable time after presentation" to make each examination had expired. Even had
there been a final payment, the right of reclamation may have remained. See id. We
hold that First National Bank did not establish that Bank of America violated a duty of
care under UCC 4-215. 

 First National Bank also alleged that Bank of America failed to exercise its duty
of ordinary care by not investigating the USPS claim that the postal money orders at
issue were forged. However, First National Bank failed to specify any relevant
authority giving rise to such a duty to investigate. We hold that First National Bank
failed to set forth a duty giving rise to a cause of action on which relief could be
granted and in any event did not provide summary judgment proof of its entitlement
to relief under this theory. Tex. R. Civ. P. 166a(c).

 First National Bank also alleged that Bank of America failed to exercise ordinary
care as imposed by Regulation CC. The relevant provision provides, "A bank shall
exercise ordinary care and act in good faith in complying with all the requirements of
this subpart." 12 C.F.R. § 229.38(a) (2004). First National Bank argued that the duty
of ordinary care and good faith was violated by failing to abide by the expeditious-return provisions in Regulation CC. See id. §229.31. However, as discussed above,
postal money orders are not subject to the expeditious-return requirements of 12
C.F.R. § 229.31. See id. § 229.42 (2004). Thus, Bank of America did not violate the
statutory duty of expeditious-return under the provisions of Regulation CC because of
its inapplicability. 


B. Bank of America's Motion for Partial Summary Judgment

 Bank of America contends that the trial court erred by denying its motion for
partial summary judgment. Bank of America alleged entitlement to summary judgment
on the grounds that First National Bank breached its warranty under UCC 4-207. See
Tex. Bus. & Com. Code Ann. § 4.207 (Vernon 2002). The relevant portions of UCC
4-207, entitled "Transfer of Warranties," provide:

 (a) A customer or collecting bank that transfers an item and receives a
settlement or other consideration warrants to the transferee and to any
subsequent collecting bank that:


 (1) the warrantor is a person entitled to enforce the item;


 (2) all signatures on the item are authentic and authorized;


 (3) the item has not been altered;


 (4) the item is not subject to a defense or claim in
recoupment (Section 3.305(a)) of any party that can be
asserted against the warrantor;


 (5) the warrantor has no knowledge of any insolvency
proceeding commenced with respect to the maker or
acceptor or, in the case of an unaccepted draft, the drawer;
and


 (6) if the item is a demand draft, the creation of the item
according to the terms on its face was authorized by the
person identified as drawer.


 (b) If an item is dishonored, a customer or collecting bank transferring the
item and receiving settlement or other consideration is obliged to pay the
amount due on the item (I) according to the terms of the item at the time
it was transferred, or (ii) if the transfer was of an incomplete item,
according to its terms when completed as stated in Sections 3.115 and
3.407. The obligation of a transferor is owed to the transferee and to
any subsequent collecting bank that takes the item in good faith. A
transferor cannot disclaim its obligation under this subsection by an
indorsement stating that it is made "without recourse" or otherwise
disclaiming liability.


 (c) A person to whom the warranties under Subsection (a) are made and
who took the item in good faith may recover from the warrantor as
damages for breach of warranty an amount equal to the loss suffered as
a result of the breach, but not more than the amount of the item plus
expenses and loss of interest incurred as a result of the breach.


 (d) The warranties stated in Subsection (a) cannot be disclaimed with
respect to checks. Unless notice of a claim for breach of warranty is
given to the warrantor within 30 days after the claimant has reason to
know of the breach and the identity of the warrantor, the warrantor is
discharged to the extent of any loss caused by the delay in giving notice
of the claim. . . .


Id. § 4.207.

 Bank of America argues that it is entitled to recoup the outstanding amounts
Bank of America paid to the USPS for reclamation of the ASASC postal money orders,
as well as damages for losses suffered as a result of breach of warranty. 

 First National Bank received at least a provisional settlement from Bank of
America for the deposit of the postal money orders at issue. The postal money orders
at issue were dishonored by the USPS on several different occasions. The process
began in January 1998 and continued well into 1999. On one occasion, Bank of
America was apparently notified of the USPS dishonor in February, 1999. However,
the various money orders had been deposited over at least an eighteen month period. 
A portion of the reclaimed money orders were over one year old. The average period
that the reclamation process took was 333 days, according to appellee. First National
Bank denied timely notice. In the event this factual dispute were resolved in favor of
First National Bank, then it would at least be entitled to limit liability or mitigate
damages to the "extent of any loss cause[d] by the delay." Id. § 4.207(d). Appellee
First National Bank also disputed its liability under section 4.207(a) of the business and
commerce code. 

 Bank of America additionally argued that it is entitled to damages for losses
suffered for breach of warranty under UCC 4-207(c). Id. § 4.207(c). Bank of America
asserted that First National Bank breached its warranty that all signatures on the postal
money orders were authentic and authorized. See id. § 4.207(a)(2). First National
Bank responded: (1) that there is a factual dispute as to whether the postal money
orders at issue were forged; (2) that Bank of America failed to give notice of its claim
of breach of warranty within the thirty days of knowing of the alleged breach; and (3)
that Bank of America failed to use ordinary care. Because there are genuine issues
of material fact, we cannot render judgment that Bank of America is entitled to
damages for losses suffered as a result of the claimed breach of warranty. We hold
the trial court did not err by denying Bank of America's motions for summary judgment
because of fact issues, some of which overlap the erroneous granting of First National
Bank's motion for summary judgment.

 At the hearing on damages, Bank of America attempted to introduce evidence
of its counter-claim. This was denied by the trial court. Neither party's motion for
partial summary judgment included the Bank of America's claims that occurred after
it had debited First National Bank's account. These claims were not part of the original
controversy that comprised the basis of the original lawsuit. Thus, the trial court erred
by refusing to allow evidence concerning these later and disparate matters.

V. Conclusion 


 We have considered all of the issues raised in First National Bank's motion for
partial summary judgment, as well as Bank of America's combined traditional motion
and no-evidence motion for summary judgment. We hold that the trial court erred by
granting First National Banks motion for summary judgment. The trial court also erred
by not allowing evidence of Bank of America's counter-claim. As appellant correctly
points out, there was no determination of liability under the counter-claim. The
counter-claim was not addressed in either party's motion for partial summary
judgment. Accordingly, we reverse and remand for further proceedings consistent
with this opinion.


 DON WITTIG

 Justice


Memorandum Opinion delivered and

filed this 21st day of June, 2007.

1. Retired Fourteenth Court of Appeals Justice Don Wittig, assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to the government code. See Tex. Gov't Code Ann.
§ 74.003 (Vernon 2005).
2. Intervenor BancInsure, Inc. did not file a motion for summary judgment. Many, if not all of
its theories on appeal, were not presented to the trial court. Accordingly those arguments will not be
considered for the first time on appeal. City of Houston v. Clear Creek Basin Author, 589 S.W.2d 671,
677 (Tex. 1979) (issues not expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal); see Tex. R. Civ. P. 166a(c). 

3. A casa de cambio is a currency exchange house, which ostensibly profits by trading on the
exchange rate between the dollar and the peso. Casas de cambio are commonly used in Mexico for
cashing checks. See Tewani Imps., Inc. v. Norwest Bank, N.A., 139 F. Supp.2d 805, 809 (S.D. Tex.
2001).
4. The USPS money order service provides postal customers with an instrument for payment of
specified sums of money. 39 C.F.R. part. 3001 (appendix A to subpart C). Postal money orders can
be purchased at post offices throughout the United States. Postal money orders are negotiated at banks
throughout the United States. Commercial banks present postal money orders to the Federal Reserve
Bank to receive credit. Domestic Mail Manual S020.3.1 (2004).


 Family members in the United States often purchase postal money orders and send them to
family members in Mexico. Often postal money orders are exchanged like cash. Mexican casas de
cambio negotiate these items in Mexico. See generally Arbitraje Casa De Cambio v. United States Postal
Serv., 297 F. Supp. 2d 165, 167 (D.D.C. 2003); see Tewani Imps., Inc., 139 F. Supp.2d. at 807
(where a United States based business located close to the United States-Mexico border accepted USPS
money orders negotiated in Mexican casas de cambio for payment of goods).
5. Between 1996 and 1997, an economic crisis affecting the Mexican economy prompted a
large-scale fraud in USPS money orders. See generally Arbitraje Casa De Cambio, 297 F. Supp.2d at
167. 
6. Tex Bus. & Com. Code Ann. § 4.101 - § 4.504 (Vernon 2002 & Supp. 2006).
7. 12 C.F.R. part 229 (2004).
8. At the hearing on damages, Bank of America attempted to introduce evidence on its counter-claim. The trial court refused its offer of proof. Under the prior settled precedent of Mafrige the
judgment was clearly final. Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993)(when summary
judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of
all claims or parties, the judgment should be treated as final for purposes of appeal). Under the nuanced
holding of Lehman and its progeny the situation is problematic. Because we will reverse and remand
in any event, we will not endeavor further exposition of this troublesome area of the law. The record
is clear that the trial court intended the judgment to be final, as did First National Bank. The apparent
logic was that the liability findings in the partial summary judgment also disposed of the counter-claim. 
Unfortunately, the partial motion did not specifically address the claims found in the counter-claim.
9. 12 U.S.C.A. § 4001 et. seq. (2000).
10. 12 C.F.R. part 229 (2004).
11. Postal money orders are subject to the general rules set out in Regulation CC regarding the
availability of funds after deposit. 12 C.F.R. § 229.12(b)(3) (2004) (depository bank shall make funds
deposited in an account by a check available for withdrawal not later than the second business day
following the banking day on which funds are deposited). Specific provisions of Regulation CC do
require for increased availability of funds for postal money orders. Regulation CC requires next day
availability of funds deposited as USPS money orders if deposited (1) in an account held by a payee of
the money order and (2) in person to an employee of the depositary bank. 12 C.F.R. § 229.10(c)(1)(ii). 
If the postal money order is not deposited in person but in an account held by a payee of a money order,
Regulation CC requires availability for withdrawal by the second business day after the banking day on
which funds are deposited. 12 C.F.R. § 22.10(c)(2).
12. 12 C.F.R. § 229.30(a) (2004) (establishing expeditious return deadlines if a paying bank
determines not to pay a check) and 12 C.F.R. § 229.31(a) (establishing expeditious deadlines for a
returning bank to return a returned check).
13. 12 C.F.R.§ 229.33(a) (2004) (establishing notice-of-nonpayment deadlines and requirements
if a paying bank determines not to pay a check).
14. 12 C.F.R. § 229.36(f) (2004) (establishing deadlines for settlement of checks presented to
a paying bank).